EDDIE ALLEN JIMENEZ

v.

COMMONWEALTH OF VIRGINIA

No. 1314-88-3

Decided May 8, 1990

COUNSEL

J. Heather Mitchell, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—The principle issue in this case is whether the evidence was sufficient to prove that Eddie Allen Jimenez was guilty of grand larceny in violation of Code § 18.2-200.1 and Code § 18.2-95 by failing "to substantially make good" advances of money for construction. Jimenez maintains that he could not be convicted under this code provision because he, in fact, expended more money on the contract than he was paid. We disagree and affirm because the evidence was sufficient to prove that Jimenez fraudulently took at least two advances of money in excess of $200 for which he promised specific and immediate construction but failed "to substantially make good."

On appeal, we consider the evidence in the light most favorable to the Commonwealth, giving to it all reasonable inferences fairly deducible therefrom. *Norman v. Commonwealth*, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986). We also "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn there-

from." *Parks v. Commonwealth*, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), *cert. denied*, 450 U.S. 1029 (1981).

The statute under which the appellant was indicted provides in pertinent part:

> If any person obtain from another an advance of money, . . . with fraudulent intent, upon a promise to perform construction, . . . and fail or refuse to perform such promise, and also fail to subsequently make good such advance, he shall be deemed guilty of larceny of such money, merchandise or other thing if he fails to return such advance within 15 days of the request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

Code § 18.2-200.1.

The appellant entered into a contract to build a four-bay garage for the homeowners, Mr. and Mrs. Simpkins. The contract provided that appellant would build a garage of fine quality and good construction to express specifications, with work to commence October 5, 1987. Barring any acts of God or unforeseen circumstances, appellant promised to complete the project no later than October 31, 1987, for a cost not to exceed $12,700.

During contract negotiations the appellant falsely represented himself as a licensed, bonded contractor. During the first two or three weeks the appellant worked at the job. With the advanced money, appellant purchased materials, paid for rental equipment, and also undertook other work.

Although by the contracted completion date appellant had received advances totaling $12,816, the work was not finished. He claimed to have purchased and delivered to the job site materials for which he had receipts totaling $11,690.16. In addition, he claimed to have paid a foreman approximately $1200, an electrician approximately $650, and two other workers approximately $2,056. Thus, the appellant claimed to have expended between $12,890 and $15,596 on the job, more money than he received in advances from the homeowners. He testified that he spent time on another job in order to get profits to be able to complete the Simpkins' job. However, the job was for a relative and he did not

get paid.

After the appellant ceased work, the Simpkins returned certain unused materials to suppliers, for which they obtained a refund of $1,066.14. The Simpkins' obtained an $8,077 estimate from another contractor for completion of the job. The appellant returned no money to Mr. and Mrs. Simpkins.

On two occasions appellant obtained advances of money from Mr. and Mrs. Simpkins by making specific promises to have work performed immediately; he defaulted on those promises. On October 22 he told Mrs. Simpkins that he needed $1,540 to have the floor poured in the garage. He said that the cement truck would be there at noon the next day to pour the floor and that the company had a policy of not pouring the cement unless it had the cash. Mrs. Simpkins testified that she thought that if she was going to get a floor she would have to give him that much more money. She gave him the check for $1,540 but Jimenez did not pay the cement company and the floor was never poured. On November 6, Mr. Dunford, the block layer, advised appellant that he would not finish the work he was doing because he had not been paid. Jimenez called Mrs. Simpkins and said he needed $500 to pay Dunford. Mrs. Simpkins knew Jimenez owed Dunford money and thought the $500 would save the work and she would get her garage. She gave Jimenez a check for $500. Jimenez called Dunford from Mrs. Simpkins' kitchen and said "she's giving me a check" and "I'm on my way to pay you the money I owe you." Jimenez never paid Dunford and the block was not laid until some months later when Mrs. Simpkins finally paid Dunford directly. Jimenez never returned the $1,540 he received for the floor or the $500 he received for the block laying. These incidents, together with the other circumstances of the case, were sufficient for the jury to infer fraudulent intent on the part of Jimenez when he received these two advances.

█ Nothing in Code § 18.2-200.1 supports Jimenez's argument that, so long as he can produce receipts indicating that he expended more than the amount of money he received in advances, he cannot be prosecuted for fraud, even if he fraudulently obtained some advances. The first sentence of the statute provides that "[i]f any person obtain from another *an advance of money*." Code § 18.2-200.1 (emphasis added). The statute does not speak of the whole contract but speaks of "advance[s] of money." Ob-

taining the advances of $1,540 for the pouring of concrete and the $500 to pay Dunford and the immediate failure to fulfill the promises made to obtain the advances was sufficient evidence to support the conviction under a jury instruction allowing conviction if appellant obtained *advances* fraudulently.

Jimenez's proposed construction of the statute would allow a contractor, who discovers that he is about to lose money because he has underestimated the job costs, to make himself whole with impunity by fraudulently obtaining advances equal to the amount of the contract and stopping work at a point in the contract when the work performed equals the contract price, irrespective of the state of completion. We do not believe the legislature intended such a result.

Jimenez also argues that the evidence was insufficient because there was no proof of: (1) a written request for repayment of advances and (2) failure to make repayment within fifteen days of the request. He further contends that the court's jury instructions failed to inform the jury that, to convict, it was required to find proof of a written request for repayment within fifteen days. He concedes that he did not object to the jury instructions, but argues that his motion to set aside the verdict as contrary to the evidence preserved the issue for appeal. We hold that the appellant's objection to the jury instructions were waived by his failure to object when the instructions were offered. *Spitzli v. Minson*, 231 Va. 12, 17-18, 341 S.E.2d 170, 173-74 (1986). We also hold that his objection to the sufficiency of the evidence on this ground was waived by not raising it in the trial court. Rule 5A:18 does not permit an issue not raised at trial to be raised for the first time upon appeal, unless necessary to attain the ends of justice. The ends of justice exception does not permit consideration of the question unless there has been an obvious miscarriage of justice. *Mounce v. Commonwealth*, 4 Va. App. 433, 435-36, 357 S.E.2d 742, 744 (1987). No obvious miscarriage of justice is shown on this record, which supports the finding that appellant fraudulently obtained the two advances. Although the evidence does not show whether or not demand was made by certified mail, return receipt requested, of the appellant to return the advances within fifteen-days, the evidence does show that in a face to face confrontation, the Simpkins made demand of appellant for the return of the advances. The evidence of this case is inapposite to that in *Johnson*

*v. Commonwealth*, 5 Va. App. 529, 365 S.E.2d 237 (1988), relied upon by appellant, where the evidence affirmatively showed that force, an element of the offense of aggravated sexual battery, did not occur. There a miscarriage of justice obviously occurred.

There is no merit to the appellant's contention that the circuit court did not have subject matter jurisdiction. Appellant bases his claim upon his allegation that the victims' loss was less than $200. Appellant was indicted for a felony. Code § 17-123 provides that the circuit court has jurisdiction of all indictments for felonies. Since the defendant was indicted for a felony, the case had to be tried in the circuit court. Circuit courts do not lose jurisdiction to convict and sentence a defendant merely because the conviction turns out to be for a lesser included misdemeanor offense. *See* Code § 19.2-285.

Finding no reversible error, the decision appealed from is affirmed.

*Affirmed.*

Koontz, C.J., and Keenan, J., concurred.