EDDIE ALLEN JIMENEZ

V.

COMMONWEALTH OF VIRGINIA

Record No. 900771

March 1, 1991

Present: All the Justices

*J. Heather Mitchell* for appellant.
*Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this appeal, a defendant challenges the sufficiency of the evidence and the granting of a jury instruction, notwithstanding his

failure properly to preserve the alleged errors at trial. Consequently, we must decide whether to invoke Rule 5:25, the so-called contemporaneous objection rule, or to apply the rule's exception, in order "to attain the ends of justice."

Eddie Allen Jimenez was tried by a jury on a felony indictment charging that he "did obtain from James O. Simpkins and Sandra D. Simpkins . . . advances of money, with fraudulent intent, upon a promise to perform construction of a building, and did fail or refuse to perform such promise, and . . . to substantially make good such . . . advances," in violation of Code § 18.2-200.1. The jury found Jimenez guilty as charged in the indictment and fixed his punishment at 12 months in jail and a $1,000 fine. The Circuit Court of Montgomery County sentenced Jimenez in accordance with the verdict.

Jimenez appealed his conviction to the Court of Appeals. The Court of Appeals affirmed the trial court's judgment, *Jimenez* v. *Commonwealth*, 10 Va. App. 277, 392 S.E.2d 827 (1990), and we granted Jimenez this appeal.

Jimenez contracted with the Simpkinses to build them a four-bay garage at a cost not to exceed $12,700. The contract contained various specifications and provided that Jimenez would erect a garage of "fine quality & good construction." Jimenez agreed to commence work on October 5, 1987, and, barring any acts of God or other unforeseen circumstances, to complete the structure no later than October 31, 1987.

During contract negotiations, Jimenez falsely represented himself as a licensed, bonded contractor. When the contract was executed, Jimenez was 26 years old and had been engaged in construction work, "[o]n and off," for 12 years.

During the first two to three weeks of October, Jimenez purchased materials, rented equipment, and performed certain work on the project, with money advanced to him by the Simpkinses. By the agreed completion date, Jimenez had received advances totaling $12,816. The work on the garage, however, was not completed.

On two occasions, Jimenez obtained advances from the Simpkinses by making specific promises to use the money to perform work immediately. Jimenez defaulted on those promises. On one occasion, the Simpkinses advanced $1,540 to Jimenez which he promised would be used to pay for pouring the concrete floor in the garage. Jimenez did not use the advancement to pay for the

concrete, and the floor never was poured. On another occasion, Jimenez requested an advance of $500, and promised to use the funds to pay a block mason. Jimenez received the $500, but he never paid the mason. Jimenez never returned these two advancements to the Simpkinses.

Jimenez presented receipts showing that he had purchased $11,690.16 worth of materials which were delivered to the job site. He also claimed that he had paid a foreman approximately $1,200, an electrician approximately $650, and two other workers approximately $2,056. Thus, according to Jimenez, he spent more money on the project than he received in advances from the Simpkinses.

After Jimenez ceased work, the Simpkinses returned certain unused materials to suppliers and received a refund of $1,066.14. The Simpkinses then obtained an $8,077 estimate from another contractor to complete the job.

■ Code § 18.2-200.1, under which Jimenez was indicted and tried, provides, in pertinent part, as follows:

> If any person obtain from another an advance of money, . . . with fraudulent intent, upon a promise to perform construction, . . . and fail or refuse to perform such promise, and also fail to substantially make good such advance, *he shall be deemed guilty of the larceny* of such money, merchandise or other thing *if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested,* to his last known address or to the address listed in the contract.

(Emphasis added.)

■ The Commonwealth failed to prove that a written request for return of an advance was sent to Jimenez by certified mail, return receipt requested, or that Jimenez failed to return such advance within 15 days of such request. Additionally, the trial court's jury instruction did not inform the jury that, to convict Jimenez, the jury was required to find proof, beyond a reasonable doubt, of such a written request for payment and of Jimenez's failure to make such payment within 15 days.[1]

---

[1] The instruction that the trial court granted provides, in pertinent part, that:
    [t]he Commonwealth must prove beyond a reasonable doubt each of the following elements of [the] crime:

Jimenez's trial counsel neglected to object to the instruction. His counsel also neglected to challenge the sufficiency of the evidence on this ground.

■ Invoking its contemporaneous objection rule, Rule 5A:18, the Court of Appeals held that Jimenez had waived his right to raise these issues for the first time on appeal. *Jimenez*, 10 Va. App. at 281, 392 S.E.2d at 830. The Court of Appeals noted that Rule 5A:18 "does not permit an issue not raised at trial to be raised for the first time upon appeal, unless necessary to attain the ends of justice." *Id.* The Court of Appeals concluded that "[n]o obvious miscarriage of justice is shown" on the record in this case because the record "supports the finding that [Jimenez] fraudulently obtained the two advances." *Id.* While conceding that the evidence fails to show that "demand was made by certified mail, return receipt requested, of [Jimenez] to return the advances within fifteen days," the Court of Appeals stated that "the evidence does show that in a face to face confrontation, the Simpkins[es] made demand of [Jimenez] for the return of the advances."[2] *Id.*

■ Rule 5A:18, one of the rules governing proceedings in the Court of Appeals, is virtually identical to Rule 5:25, one of the rules governing proceedings before this Court.[3] The purpose of Rule 5:25 is "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to

---

1. That [Jimenez] obtained an advance of money by promising to perform construction or improvement of a building or structure permanently annexed to real estate; and
2. That [Jimenez], with the intent to defraud, failed or refused to perform this promise; and
3. That [Jimenez] failed to repay [the Simpkinses] the money advanced to him.

[2] This "confrontation" occurred by telephone only six days prior to Jimenez's arrest.

[3] Rule 5A:18, in pertinent part, provides as follows:

No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

Rule 5:25, in pertinent part, provides as follows:

Error will not be sustained to any ruling of the trial court . . . before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.

enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials." *Fisher* v. *Commonwealth*, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988), *cert. denied*, 490 U.S. 1028 (1989). Thus, application of the rules tends to promote, not hinder, the administration of justice.

We consistently have applied the rule in both civil and criminal cases, including cases in which the death penalty was imposed. *See, e.g., Mackall* v. *Commonwealth*, 236 Va. 240, 372 S.E.2d 759 (1988), *cert. denied*, 492 U.S. 925 (1989); *Quintana* v. *Commonwealth*, 224 Va. 127, 295 S.E.2d 643 (1982), *cert. denied*, 460 U.S. 1029 (1983). Indeed, it is a rare case in which, rather than invoke Rule 5:25, we rely upon the exception and consider an assignment of error not preserved at trial "to enable this Court to attain the ends of justice."

One of these rare cases in which we applied the exception was *Ball* v. *Commonwealth*, 221 Va. 754, 273 S.E.2d 790 (1981). Ball was convicted of capital murder and sentenced to life imprisonment. *Id.* at 755-56, 273 S.E.2d at 790-91. The indictment charged Ball with the willful, deliberate and premeditated killing of another "in the commission of robbery while armed with a deadly weapon." Code § 18.2-31(d). We concluded that "[t]he evidence, construed in the light most favorable to the Commonwealth, showed that [the victim] was killed during an attempted robbery, rather than in the actual commission of robbery." *Id.* at 757, 273 S.E.2d at 792. Thus, "[u]nder the evidence, the only offense of which Ball could properly be convicted was felony murder of the first degree under [Code] § 18.2-32."[4] *Id.*

Trial counsel in *Ball* neither proffered an instruction on felony murder of the first degree nor objected to the trial court's erroneous ruling that, under the evidence, capital murder was the only offense of which Ball could be convicted. *Id.* at 758, 273 S.E.2d at 793. The Commonwealth contended, however, that the trial court had no duty "to intervene on its own initiative and give [a felony murder] instruction." *Id.* at 757, 273 S.E.2d at 791. We rejected the contention, reversed the capital murder conviction, and remanded the case for a new trial under proper jury instructions. *Id.* at 759, 273 S.E.2d at 793. In doing so, we gave the following explanation:

---

[4] Code § 18.2-31(d) subsequently was amended to read, "[t]he willful, deliberate, and premeditated killing of any person in the commission of robbery *or attempted robbery* while armed with a deadly weapon." Acts 1989, c. 527. (Emphasis added.)

Under Rule 5:21 [now Rule 5:25] we do not notice such errors except in those rare instances when it is necessary to enable us to attain the ends of justice. This is one of those instances. *Ball has been convicted of a crime of which under the evidence he could not properly be found guilty.* The court erred in overruling the defense motion to strike the evidence as to capital murder, and in instructing the jury on that offense. We understand the reason for the erroneous rulings, but we cannot permit this conviction to stand by ignoring the errors.

*Id.* at 758-59, 273 S.E.2d at 793 (emphasis added); *accord Newton* v. *City of Richmond*, 198 Va. 869, 96 S.E.2d 775 (1957); *Brown* v. *Commonwealth*, 8 Va. App. 126, 380 S.E.2d 8 (1989).

We also have said that, when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter. *Bryant* v. *Commonwealth*, 216 Va. 390, 393, 219 S.E.2d 669, 671 (1975); *Whaley* v. *Commonwealth*, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973). In *Bryant*, the defendant was convicted of rape. 216 Va. at 390, 219 S.E.2d at 670. His sole defense was consent by the prosecutrix, and he presented supportive evidence. *Id.* at 392, 219 S.E.2d at 671. The defendant offered a lengthy instruction which the trial court refused. *Id.* at 391-92, 219 S.E.2d at 670-71. Although we found the instruction to be "argumentative, confusing and potentially misleading," *id.* at 392, 219 S.E.2d at 671, we reversed the judgment and remanded the case for a new trial, *id.* at 393, 219 S.E.2d at 672. We concluded that, because "[a]n instruction on consent was crucial to [the defendant's] sole defense," the trial court was obligated to amend the instruction. *Id.*, 219 S.E.2d at 671-72.

In *Whaley*, the trial court refused an objectionable instruction relating to the presumption of innocence and sent the case to the jury without a corrected instruction on the subject. 214 Va. at 354-55, 200 S.E.2d at 557-58. We stated that "the presumption of innocence is 'a landmark of the law.'" *Id.* at 355, 200 S.E.2d at 558. We ruled, therefore, that the trial court's failure to amend the proffered instruction and give it in proper form was reversible error. *Id.* at 356, 200 S.E.2d at 558. In so ruling, we made the following observation:

We adhere to the rule that the trial court is not required to amend or correct an erroneous instruction, but the rule is subject to the limitation that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form. A jury should not be left in the dark on the subject.

*Id.* at 355-56, 200 S.E.2d at 558; *accord Nelson* v. *Commonwealth*, 143 Va. 579, 589-91, 130 S.E. 389, 392 (1925); *Sims* v. *Commonwealth*, 134 Va. 736, 759-60, 115 S.E. 382, 390 (1922).

■ In 1987, the General Assembly amended Code § 18.2-200.1 by adding the very phrase at issue in the present case, to-wit: "if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract." Acts 1987, c. 358. A criminal statute, such as Code § 18.2-200.1, must be strictly construed. We think it clear that the General Assembly meant what it said, *i.e.*, that a person accused of violating the statute cannot be convicted unless the evidence proves beyond a reasonable doubt, *inter alia*, that the accused "fail[ed] to return [the] advance within fifteen days of a request to do so," and that the request was "sent by certified mail, return receipt requested."

■ Consequently, we reject the Attorney General's assertion that, because Jimenez had actual notice of a demand for return of the advances, the statutory requirement of a written notice by certified mail was waived. We think the notice requirement of the statute was a material element of the offense charged, and the omission of the element in the jury instruction, as well as the failure to produce evidence thereof, constitutes reversible error.

■ We also reject the Attorney General's contention that Jimenez waived his right to raise this matter on appeal because he failed to preserve the error at trial. The granted instruction omitted some essential elements of the offense. Likewise, no evidence was produced relating to those elements. Jimenez, therefore, was convicted of a non-offense.

Accordingly, to attain the ends of justice, we will reverse the judgment of the Court of Appeals and dismiss the indictment.

*Reversed and dismissed.*