COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Coleman and Elder
Argued at Richmond, Virginia


OLAN CONWAY ALLEN

v.          Record No. 2560-93-2                    OPINION BY
                                          JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA                        AUGUST 15, 1995


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                  Paul M. Peatross, Jr., Judge

            Michael T. Hemenway (George H. Dygert &
            Associates, on briefs), for appellant.

            Richard B. Smith, Assistant Attorney General
            (James S. Gilmore, III, Attorney General,
            on brief), for appellee.


     The appellant, Olan Conway Allen, was convicted of breaking

and entering and grand larceny.  On appeal, he contends that the

Commonwealth failed to produce exculpatory evidence as required

by Brady v. Maryland, 373 U.S. 83 (1963), that the indictments

should have been dismissed on double jeopardy grounds, and that

the trial court gave an improper jury instruction.  For the

following reasons, we affirm the trial court's decisions.

     In 1992, the appellant was charged with breaking and

entering and grand larceny.  A jury found him guilty on both

charges.  Before sentencing and entry of the conviction orders,

the Commonwealth's attorney moved for a mistrial on the ground

that one of the petit jurors was not qualified under

Code § 8.01-337 because she was not a resident of Albemarle

County, but rather resided in the City of Charlottesville.  The

appellant agreed that because the juror was not qualified to serve, the guilty verdicts could not stand.  However, the appellant requested that the charges be dismissed.  The trial court granted the Commonwealth's motion to declare a "mistrial" and set aside the verdicts.  Second and third trials ended in mistrials; however, in a fourth trial, the appellant was convicted of both charges, from which this appeal followed.

## I.  DOUBLE JEOPARDY

The appellant contends that the trial court erred by not dismissing the charges against him after the court erroneously[1] granted the Commonwealth's motion for a "mistrial" at the conclusion of the first trial.  He argues that he was in jeopardy at the first trial, and because the court erred in setting the verdicts aside, the Commonwealth is prohibited from placing him in jeopardy a second time.

When the trial judge considered the Commonwealth's motion for a "mistrial," the appellant acquiesced in the Commonwealth's position that the guilty verdicts had been rendered by a jury improperly constituted and had to be set aside.  He argues, however, that in agreeing that the verdicts could not stand, he

[1] Insofar as the record reflects, at the post-trial motion to set aside the verdicts, the trial judge, Commonwealth's attorney, and defense counsel believed, in good faith, that because the juror was not qualified, the verdicts were invalid and had to be set aside.  However, the Attorney General concedes on appeal that based upon the provisions of Code § 8.01-352(b) and the holding in Thurman v. Commonwealth, 107 Va. 912, 915, 60 S.E. 99, 100 (1908), the irregularity did not invalidate the verdicts or justify the trial court in setting them aside.

was not acquiescing in the court declaring a "mistrial." Apparently, the appellant, for purposes of double jeopardy protections, is attempting to draw a meaningful distinction between a trial court setting aside guilty verdicts and declaring a mistrial. However, on the facts of this case, we find no rational distinction, for purposes of determining former jeopardy, between the appellant agreeing, in effect, to the trial court's setting aside the verdicts and agreeing to declare a "mistrial." The fact that the Commonwealth's attorney moved for a mistrial, rather than to set aside the verdicts, and the trial court used that terminology is of no consequence. The appellant agreed that because the juror was not qualified, the verdicts could not stand. Therefore, both parties concurred, in effect, in the Commonwealth's motion for a "mistrial" or to set aside the verdict on the mistaken belief that such action was required due to a defect in constituting the jury.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "twice put in jeopardy of life or limb" for the same offense.

> As the Supreme Court has explained: The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a constant state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty.

-3-

<u>United Stated v. Ham</u>, 1995 WL 369605,\*3 (4th Cir. June 20, 1995) (quoting <u>Green v. United States</u>, 355 U.S. 184, 187-88 (1957)).

A citizen may relinquish or waive a constitutional right or protection, but before being considered to have done so, the action constituting a waiver or relinquishment must be clear. For example, a defendant waives his Fifth Amendment protection contained in the Double Jeopardy clause by consenting to the trial court's declaration of a mistrial, <u>see</u> <u>United States v. Jorn</u>, 400 U.S. 470, 484-85 (1971) and <u>Ham</u> (citing multiple circuits that have adopted an implied consent rationale), provided the prosecutor is not guilty of misconduct designed to induce a mistrial. <u>See</u> <u>Oregon v. Kennedy</u>, 456 U.S. 667, 673 (1982) (holding that a defendant <u>may</u> invoke the double jeopardy bar if the conduct causing the mistrial was based on prosecutorial or judicial misconduct intended to provoke the defendant into moving for a mistrial). Similarly, a citizen may waive his Fourth Amendment right to be free from unreasonable searches and seizures by consenting to a warrantless unjustified search. <u>Limonja v. Commonwealth</u>, 8 Va. App. 532, 539, 383 S.E.2d 476, 480 (1989), <u>cert. denied</u>, 495 U.S. 905 (1990). A suspect may also give up his Fifth Amendment right to not be compelled to give incriminating evidence by voluntarily testifying or by knowingly consenting to answer questions during an extra-judicial custodial interrogation. <u>Jenkins v. Anderson</u>, 447 U.S. 231 (1980). <u>Pugliese v. Commonwealth</u>, 16 Va. App. 82, 428 S.E.2d 16

(1993). A defendant's consent to a trial court's action declaring a mistrial may be implied from circumstances, provided they clearly indicate that the defendant acquiesced in the actions of the prosecutor or the court. See Ham at *4. See also United States v. Puleo, 817 F.2d 702, 705 (11th Cir.), cert. denied, 489 U.S. 978 (1987) (holding that "consent 'may always be implied from a totality of the circumstances attendant on the declaration of a mistrial'") (quoting United States v. Goldstein, 479 F.2d 1061, 1067 (2nd Cir.), cert. denied, 414 U.S. 873 (1973)).

Although the trial court characterized its action in voiding the verdicts as a mistrial, the court was setting aside the verdicts. See Blacks Law Dictionary, 1002 (6th ed. 1990) (defining a mistrial as a trial not resulting in a lawful decision or verdict because of serious prejudicial misconduct or error). Regardless of the terminology used by the trial court, for purposes of the former jeopardy protection, we find no difference of constitutional significance between setting aside a verdict because of error in the composition of the jury and declaring a mistrial had the same error been discovered before the verdict. Here, the defendant agreed with the trial court's erroneous holding that the verdicts could not stand due to the error in constituting the jury. By agreeing that the verdicts could not stand, the defendant consented to the court's action setting aside the verdicts. By agreeing that the jury was

improperly constituted and that the verdicts were invalid, the appellant invited the trial judge to set aside the verdicts. We hold that in doing so, the defendant waived his double jeopardy protections. See Puleo, 817 F.2d at 705.

"No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate--to invite error, as the defense admittedly did here, and then to take advantage of the situation created by his own wrong." Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988), cert. denied, 490 U.S. 1028 (1989).

## II.  EXCULPATORY EVIDENCE

The appellant next contends that the Commonwealth wrongfully withheld from him exculpatory material.

No general constitutional right to discovery exists in a criminal case. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Rule 3A:11 defines the scope of discovery in a felony prosecution. In addition, however, Brady recognizes the prosecution's due process-based duty to disclose to an accused exculpatory evidence, that is, evidence which is material to guilt or punishment and favorable to the accused. Williams v. Commonwealth, 16 Va. App. 928, 932-33, 434 S.E.2d 343, 346 (1993). See also Knight v. Commonwealth, 18 Va. App. 207, 212, 443 S.E.2d 165, 168 (1994). However, in order to justify reversal on appeal, an appellant must not only show that exculpatory evidence was not disclosed, but must show prejudice

as a result of the Commonwealth's failure to disclose.  Stotler v. Commonwealth, 2 Va. App. 481, 484, 346 S.E.2d 39, 40-41 (1986).

At trial, an investigator testified that he showed photographs of possible suspects to the witnesses "sometime in the latter part of August," which would have been a few days after the crimes occurred.  After trial, the investigator told the defense that he determined the actual dates were in mid-to-late September.  The appellant argues that the investigator's uncertainty as to the exact date was exculpatory and that the Commonwealth should have disclosed that the investigator was uncertain in response to the request for exculpatory evidence.  Appellant argues that with this evidence, he could have shown that the witness was mistaken and not credible, that the identification was suspect because of the lapse in time, or that, perhaps, more than one suggestive lineup occurred.

We do not find the investigator's uncertainty as to the precise date of the photographic lineup to be significant or exculpatory.  The witness's answer was not specific; it included a time frame of several weeks.  Furthermore, had the appellant known and been able to show at trial that the investigator was uncertain whether the photographic lineup was conducted in August or September, we cannot say that it probably would have produced a different outcome or result in the trial.  See United States v. Bagley, 473 U.S. 667, 682 (1985).  This type of uncertainty or

-7-

discrepancy in evidence frequently occurs and is elicited at trial during cross-examination.  See Epperly v. Booker, 997 F.2d 1, 9 (4th Cir.), cert. denied, 114 S. Ct. 611 (1993) (stating that a prosecutor cannot be deemed to have wrongly suppressed exculpatory evidence when it was available from other sources such as cross-examination).  On the facts of this case, the Commonwealth was not required to determine the degree to which the investigator was certain of the date on which he conducted the photographic lineup and was not required to provide such information under its duty to disclose exculpatory evidence.

The appellant also contends that the Commonwealth withheld evidence of an interview with the appellant's cousin, Betty Sheffey, in which Sheffey told the investigators that the appellant was not involved in the crime.  Sheffey's statement was an unfounded conclusion and was not exculpatory.  She gave no facts or information to the officers that she knew of the appellant's whereabouts or why she believed him not to have been involved.  An unfounded belief, such as the one given by Sheffey, is not exculpatory evidence which the prosecution is required to disclose.

### III.  JURY INSTRUCTIONS

The appellant contends that the trial court improperly instructed the jury by omitting an essential element in the breaking and entering instruction.  Instruction No. 5 stated:

OLAN C. ALLEN is charged with the crime of breaking and entering.  The Commonwealth must prove beyond a reasonable doubt each of the

-8-

following elements of that crime:

(1)   That the dwelling house of Henry and Ruth Chiles was broken into and entered without permission; and

(2)   That the breaking and entering was done in the daytime; and

(3)   That it was done with the intent to commit larceny.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find OLAN C. ALLEN guilty.

The appellant argues that the instruction is fatally flawed because it does not tell the jury that they were required to find beyond a reasonable doubt that Olan Conway Allen, the defendant, was the person who broke and entered the Chiles' home.  He contends that the instruction allowed the jury to find him guilty if they found that a breaking and entering occurred without finding that he was the criminal agent.

The appellant acknowledges that he did not object to the giving of Instruction No. 5 in this form.  Generally, Rule 5A:18, requiring a contemporaneous objection, would bar the appellant from raising the issue on appeal.  He contends, however, that in order to avoid a miscarriage of justice, we must consider the trial court's failure to instruct the jury on the fundamental requirement that the Commonwealth prove that the defendant was the criminal agent.

"[T]o avail himself of the [ends of justice exception] the

defendant had to affirmatively show that 'a miscarriage of justice [has] occurred, not . . . that a miscarriage might have occurred' [and it] requires that the error be clear, substantial and material." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989) (quoting Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)).

While the ends of justice exception is narrow, Mounce, 4 Va. App. at 436, 357 S.E.2d at 744, the exception "requires correction of an instruction which allows a jury to convict a defendant without proof of an element of a crime." Campbell v. Commonwealth, 14 Va. App. 988, 992, 421 S.E.2d 652, 654 (1992), aff'd, 246 Va. 174, 431 S.E.2d 648 (1993). One may not be convicted for conduct which is not criminal. Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). The overriding purpose of jury instructions is to "inform the jury as to the law." Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986) (quoting 75 Am. Jur. 2d Trial § 573 (1974)). When informing the jury, the trial court must be careful to do so in such a manner as to not mislead the jury. Id. The trial court has an affirmative duty to properly instruct. Jimenez, 241 Va. at 250, 402 S.E.2d at 681.

Even though we accept the appellant's contention that Instruction No. 5 did not expressly inform the jury that in order to find the defendant guilty, they must find that he was the person who broke and entered the Chiles' home, that requirement

of proof was clearly implicit in the trial process from indictment through arraignment and verdict.  Also, it was part of the other instructions, including the instruction on larceny.  Thus, on this record, Instruction No. 5 as given could not have misled the jury or allowed them to find the defendant guilty without finding that he was the criminal agent.  The evidence proved beyond a reasonable doubt that a crime had been committed and that the defendant committed it.  The appellant could not have been convicted for conduct that was not criminal.  Moreover, because the jury could not reasonably have applied Instruction No. 5 absent proof of criminal agency, no miscarriage of justice occurred.  Because no miscarriage of justice could have resulted from the failure to have stated expressly the obvious requirement in the jury instruction, appellate review of the issue is barred by Rule 5A:18.

Accordingly, we affirm the convictions.

<u>Affirmed.</u>