COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Decker
Argued at Norfolk, Virginia

UNPUBLISHED

BRIAN THOMAS SMITH

MEMORANDUM OPINION[*] BY
v.      Record No. 2299-13-1      JUDGE MARLA GRAFF DECKER
JULY 28, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

James O. Broccoletti (Randall J. Leeman, Jr.; Zoby, Broccoletti &
Normile, P.C., on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Brian Thomas Smith appeals his convictions for two counts each of first-degree murder, in

violation of Code § 18.2-32, and use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1. He asserts that the trial court erred by refusing to instruct the jury on voluntary

manslaughter. He also contends that the trial court erroneously instructed the jury on first-degree

and second-degree murder because it failed to properly explain the circumstances under which he

was entitled to an acquittal. We hold that any error in refusing to instruct the jury on voluntary

manslaughter was harmless. We further hold that our review of the challenged murder instructions

is barred by Rule 5A:18 because the appellant failed to object to the wording of the instructions at

trial and the ends-of-justice exception does not apply on the facts of this case. Accordingly, we

affirm the appellant's convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

On March 16, 2012, Katherine Parker and her husband, Eddie Ezzell, were found dead in their motor home by Deana VanKirk. Ezzell, who was on the floor, had sustained two gunshot wounds to the side of his head, both of which were above and behind his right ear. Parker, who was found slumped over in a chair, had been shot once in the side of her forehead at point-blank range. Parker's purse, which had contained $300, was missing. Their dog, which was also inside the motor home, had not been harmed.

On March 14, 2012, two days before the bodies were found, Parker and the appellant exchanged several telephone calls, some of which were overheard by VanKirk. Parker and the appellant had been friends for a long time, and Parker had sold oxycodone to the appellant on at least one prior occasion, about a month earlier. On March 14, the appellant phoned Parker repeatedly in an effort to obtain additional drugs, suggesting that he was "sick" and "really need[ed] this." The two arranged for the appellant to come to Parker's motor home that evening. Parker's telephone records revealed that her last outgoing call was to the appellant's voicemail at 10:13 p.m. on March 14, 2012. At 10:21 p.m., she received a call from VanKirk, which she answered. From that point forward, all incoming calls went to voicemail, and no outgoing calls were made from Parker's phone. Although telephone records showed that Parker and the appellant had called or attempted to call each other forty-seven times in the first two weeks of that month, the appellant made no effort to contact Parker by phone after March 14.

---

[1] Reviewing jury instruction and harmless error issues requires us to set out all evidence relevant to those determinations. See Sarafin v. Commonwealth, 288 Va. 320, 325, 764 S.E.2d 71, 74 (2014) (holding that in determining whether the lower court improperly denied a proffered jury instruction, the appellate court must view the evidence in the light most favorable to the instruction); Bell v. Commonwealth, 47 Va. App. 126, 140 n.4, 622 S.E.2d 751, 757 n.4 (2005) (noting that an appellate court may conclude that an error was harmless only if it can do so without usurping the trial court's or jury's fact-finding function).

About three months after the murders, the appellant told Wayne Naill, from whom the appellant also purchased drugs, that he had been involved in a shooting. The appellant told Naill that a man from whom he "wanted to go buy some pills . . . [had] pulled out a gun" and "pointed it at [him]." The appellant indicated that he then pulled out his own gun and fired first. The appellant further related to Naill that when the man's companion started to run, he shot her too. According to Naill, the appellant said that after he killed the couple, he took "[p]ills and cash" and "[p]artied in a hotel room for a couple of days." He also told Naill that the shooting occurred in "a trailer" in Newport News and that he "let the [couple's] dog live," two points that accurately described the circumstances surrounding the shooting of Parker and Ezzell.

A few days later, Detective J.R. Espinoza, of the Newport News Police Department, arrested the appellant and interviewed him. The appellant admitted that he had gone to Parker's residence on March 14, 2012, and purchased Percocet and methadone from her. However, he claimed that Parker and Ezzell "were still alive" when he left.

Following the appellant's arrest for the murders, he was housed in the same pod with inmate Ashton Washington. Washington said that the appellant reported that he "went to go cop some drugs from [the victims]" but "things didn't go right." According to Washington, the appellant said "other things happened which caused [him] to react against [the victims] and . . . do things he didn't want to do."

At trial, the Commonwealth proffered two instructions covering the elements of first-degree and second-degree murder. The instructions were identical, except that Instruction 11 referred to Parker and Instruction 12 named Ezzell. They contained the following language:

> The defendant is charged with the crime of first degree murder of [Katherine Parker/Eddie Ezzell]. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

(1) That the defendant killed [Parker/Ezzell]; and

(2) That the killing was malicious; and

(3) That the killing was willful, deliberate and premeditated.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the above offense as charged, then you shall find the defendant guilty . . . .

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first two elements of the offense as charged, but has not proved beyond a reasonable doubt the third element, that the killing was willful, deliberate, and premeditated, then you shall find the defendant guilty of second degree murder . . . .

If you find that the Commonwealth has failed to prove beyond a reasonable doubt the first two elements of the offense, then you shall find the defendant not guilty of first or second degree murder.

Counsel for the appellant expressly stated, "I certainly don't object to that instruction." He followed up by asking the court also to instruct the jury on voluntary manslaughter. He argued that the testimony of Commonwealth's witnesses Naill and Washington supported the theory that this was "a robbery gone awry" and that the killings occurred "in the heat of passion upon reasonable provocation or mutual combat." The judge refused to instruct the jury on voluntary manslaughter.

In addition to the elements instructions covering first-degree and second-degree murder, the jury was instructed regarding the presumption of innocence, the definitions of premeditation and malice, and the fact that it could infer malice upon proof of an unlawful killing or the use of a deadly weapon. Further, each finding instruction gave the jury three separate options—finding the appellant guilty of first-degree murder, finding the appellant guilty of second-degree murder, and finding the appellant not guilty of murder.

- 4 -

The jury found the appellant guilty of two counts of first-degree murder. He was sentenced to twenty years in prison for each offense. He was also found guilty of two counts of using a firearm in the commission of a felony and sentenced to three years for each of those offenses.

## II. ANALYSIS

The appellant contends that the trial court erred by refusing to instruct the jury on voluntary manslaughter. He also argues that the elements instruction covering first-degree and second-degree murder contained error because it failed to explain adequately the circumstances under which he was entitled to an acquittal.[2]

### A. *Voluntary Manslaughter Instruction*

The jury was instructed on first-degree and second-degree murder. The court refused the appellant's request to instruct the jury on voluntary manslaughter. The jury found the appellant guilty of two counts of first-degree murder. Based upon legal precedent, any error in refusing to instruct the jury on voluntary manslaughter was harmless on the facts of this case.

As the appellant recognized at oral argument, this analysis is controlled by the decision in Turner v. Commonwealth, 23 Va. App. 270, 277-78, 476 S.E.2d 504, 508 (1996), aff'd, 255 Va. 1, 1, 492 S.E.2d 447, 447 (1997) (affirming "[f]or the reasons stated by the Court of Appeals"). This Court held in Turner that the refusal of a voluntary manslaughter instruction was error but was harmless based on the procedural posture of the case. Id. at 275-78, 476 S.E.2d at 507-08 (applying the standard appropriate in the context of non-constitutional error, that an error is harmless if the reviewing court can conclude, "'without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same'" (quoting Davies v. Commonwealth, 15

---

[2] As explained *supra* in Part I, the trial court gave two instructions. Each instruction covered both offenses and was identical to the other except that Instruction 11 referred to Parker and Instruction 12 named Ezzell as the victim. For ease of reference in this analysis, we use the word "instruction" in the singular to refer to the identical wording in both instructions.

Va. App. 350, 353, 423 S.E.2d 839, 840 (1992))); see Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001). The Court noted that the jury, by convicting the defendant of first-degree murder and rejecting the lesser-included offense of second-degree murder, "found beyond a reasonable doubt that [the defendant] acted not only maliciously, but also willfully, deliberately, and premeditatedly." Turner, 23 Va. App. at 277, 476 S.E.2d at 508. Therefore, it reasoned that the jury, "by rejecting the lesser-included offense of second degree murder, necessarily rejected the factual basis upon which it might have rendered a verdict on the lesser-included offense of voluntary manslaughter." Id. at 277-78, 476 S.E.2d at 508. The Court held that this finding allowed it to conclude, without usurping the jury's fact-finding function, that the error in not instructing the jury on voluntary manslaughter was harmless, a position adopted by the Supreme Court of Virginia in its review of the issue. See id. at 275-78, 476 S.E.2d at 507-08, aff'd, 255 Va. at 1, 492 S.E.2d at 447; accord Cortez-Hernandez v. Commonwealth, 58 Va. App. 66, 82-83, 706 S.E.2d 893, 902, adopted on reh'g en banc, 59 Va. App. 37, 38 & n.1, 716 S.E.2d 484, 484 & n.1 (2011).

Similarly in the appellant's case, the trial court instructed the jury on first-degree and second-degree murder but not voluntary manslaughter.[3] The jury, by returning two verdicts of guilty for first-degree murder, found that the appellant acted with malice and premeditation in killing each of the victims. In doing so, it necessarily rejected the factual basis upon which it might have rendered a verdict of voluntary manslaughter for either killing.

Accordingly, here, as in Turner, the trial court's refusal to instruct the jury on voluntary manslaughter, if error, was harmless and does not support reversal of the convictions.

---

[3] It is undisputed that the instruction properly set out the elements required to *convict* the appellant of each of these offenses. The appellant's challenge to the elements instruction, addressed *infra* in Part II.B., pertains only to the language delineating the circumstances under which the jury was required to *acquit* him.

*B. Instruction Defining First-Degree and Second-Degree Murder*

The appellant contends that the trial court erred in the way it instructed the jury on first-degree and second-degree murder.  He acknowledges that the instruction properly identified the elements of those offenses.  He suggests, however, that the remaining portion of the instruction was erroneous because it incorrectly told the jury that it could find him *not guilty* only if the Commonwealth failed to prove *both* that he had killed the victim *and* that he acted with malice.  Instead, he argues, the instruction should have explained to the jury that it had to find him not guilty if the Commonwealth failed to prove *either* of those elements.

Rule 5A:18 provides, in relevant part, that no ruling of the trial court will be reversed absent a specific, contemporaneous objection, "except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  See Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010).  The appellant concedes that he did not object to the wording of the jury instruction in the trial court as required by Rule 5A:18.  He asserts, however, that the rule's ends-of-justice exception applies in this case.  We conclude that the ends-of-justice exception does not apply.

The ends-of-justice exception "'is narrow and is to be used sparingly.'"  Bazemore v. Commonwealth, 42 Va. App. 203, 219, 590 S.E.2d 602, 609 (2004) (*en banc*) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997)).  In order to successfully invoke the ends-of-justice exception, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred."  Redman, 25 Va. App. at 221, 487 S.E.2d at 272, cited with approval in Ali v. Commonwealth, 280 Va. 665, 671, 701 S.E.2d 64, 68 (2010).  Moreover, the error at issue must be "'clear, substantial and material.'"  Brown, 279 Va. at 219, 688 S.E.2d at 190 (quoting West v. Commonwealth, 43 Va. App. 327, 338, 597 S.E.2d 274, 279 (2004)).

Virginia's appellate courts have addressed the application of the ends-of-justice exception in the context of jury instructions in several cases. "Generally, when a jury instruction, though erroneous, is given without a contemporaneous objection at trial, the instruction becomes 'the law of the case,' and[] any objection to the instruction on appeal is waived." Wubneh v. Commonwealth, 51 Va. App. 224, 228, 656 S.E.2d 418, 420 (2008) (citation omitted) (quoting Ulloa v. QSP, Inc., 271 Va. 72, 80, 624 S.E.2d 43, 48 (2006)), overruled in part on other grounds by Startin v. Commonwealth, 56 Va. App. 26, 40 n.4, 690 S.E.2d 310, 317 n.4 (2010) (*en banc*), aff'd, 281 Va. 374, 706 S.E.2d 873 (2011); see King v. Sowers, 252 Va. 71, 77, 471 S.E.2d 481, 484 (1996). Logically, if every erroneously worded instruction justified invoking the ends-of-justice exception, the exception would swallow the rule. See Alford v. Commonwealth, 56 Va. App. 706, 710, 696 S.E.2d 266, 268 (2010). Instead, only in "extraordinary" circumstances will this Court use the ends-of-justice exception to review a faulty jury instruction that was given without objection at trial. Bazemore, 42 Va. App. at 221, 590 S.E.2d at 611.

The aspect of the ends-of-justice exception that is most akin to the appellant's challenge here permits review on appeal, despite the absence of a contemporaneous objection, when a two-pronged test is satisfied: the record must show that both "a 'granted instruction omitted some essential element[] of the offense' *and* 'no evidence was produced relating to th[at] element[].'" Id. at 219, 590 S.E.2d at 610 (emphasis added) (quoting Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681-82 (1991)). It is the "combination of a flawed or missing jury instruction and the failure of the evidence to prove an essential element [that] triggers the ends-of-justice exception." Alford, 56 Va. App. at 710, 696 S.E.2d at 268; see Ali, 280 Va. at 670-71, 701 S.E.2d at 68 (applying the ends-of-justice exception to reverse in part because the evidence "clearly and affirmatively" showed that an element of a crime did not occur).

Based on the procedural posture of this case, whether the ends-of-justice exception applies is "inextricably linked" to the question on the merits—whether the instruction, if faulty, allowed the jury to convict the appellant without proof of an essential element of the offense. See Akers v. Commonwealth, 31 Va. App. 521, 527 n.2, 525 S.E.2d 13, 16 n.2 (2000); see also Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000) (applying this principle in a case in which the evidence failed to prove an element of the offense). Accordingly, we turn to an examination of the impact of the wording of the instruction on the outcome in the appellant's case.

In our review, we look to the instructions as a whole. Blaylock v. Commonwealth, 26 Va. App. 579, 599, 496 S.E.2d 97, 107 (1998); see Hawthorne v. VanMarter, 279 Va. 566, 586, 692 S.E.2d 226, 238 (2010); Hodge v. Commonwealth, 217 Va. 338, 347, 228 S.E.2d 692, 698 (1976); cf. Buchanan v. Angelone, 522 U.S. 269, 278 (1998) (considering "extensive" mitigating evidence, the arguments of counsel, and the entire context of the jury instructions, "particularly . . . the instruction to consider 'all the evidence,'" and holding that it was not reasonably likely that the jurors thought they were precluded from considering mitigating evidence, despite the absence of an instruction explaining the concept of mitigation).[4] The trial court instructed the jury on the presumption of innocence, explaining that the presumption "remains with the [appellant] throughout

---

[4] The appellant indirectly disputes this accepted legal principle. Citing a recent habeas corpus decision from the United States Court of Appeals for the Fourth Circuit, he argues that "other trial instructions . . . cannot substitute for an explicit instruction." See Lee v. Clarke, 781 F.3d 114, 126 (4th Cir. 2015). However, Lee is factually distinguishable because it involved a failure to instruct the jury on a key definition related to voluntary manslaughter and a jury verdict for the next highest offense, second-degree murder. Id. at 121-27. Further, decisions of the Fourth Circuit are not binding on Virginia's courts. See, e.g., Toghill v. Commonwealth, 289 Va. 220, 227, 768 S.E.2d 674, 677-78 (2015). In addition, the holding in Carter v. Kentucky, 450 U.S. 288 (1981), the United States Supreme Court decision upon which Lee relies, is distinguishable. Carter involved an instruction regarding the constitutional right to remain silent and the bar on drawing an adverse inference from a defendant's decision to assert that right by not testifying at trial. 450 U.S. at 303-04. In that unique context, the Court concluded that "[t]he other trial instructions and arguments of counsel . . . were no substitution for the explicit instruction . . . requested." Id. at 304. It further emphasized that the "constitutional obligation" of "a state trial judge" to give such an instruction depends "upon proper request." Id. at 305.

the trial and is enough to require you to find the [appellant] not guilty unless and until the Commonwealth proves *each and every element of the offense beyond a reasonable doubt*." (Emphasis added); see Virginia Model Jury Instructions–Criminal No. 2.100 (2014). The trial court also instructed the jury on first-degree and second-degree murder. It is undisputed that the instruction properly defined the elements of those two offenses. The instruction expressly provided that for a conviction of first-degree murder, the Commonwealth was required to prove beyond a reasonable doubt (1) that the appellant killed the named victim, (2) that the killing was malicious, and (3) that the killing was willful, deliberate, and premeditated. See Virginia Model Jury Instructions–Criminal No. G33.200A (2014). It also correctly provided that if the Commonwealth proved elements (1) and (2) beyond a reasonable doubt but failed to prove element (3)—that the killing was willful, deliberate, and premeditated—the jury should find the appellant guilty of second-degree murder. See id. Nos. G33.200A, G33.320. Further, the jury was properly instructed regarding the definitions of premeditation and malice, and the fact that it could infer malice upon proof of an unlawful killing or the use of a deadly weapon. Finally, the finding instructions provided the jury with the express option of finding the appellant not guilty of murder.

Assuming the challenged elements instruction contained error, it was in the wording concerning the jury's obligation if it found that the Commonwealth had failed to prove either grade of murder. The instruction provided, in relevant part, "If you find that the Commonwealth has failed to prove beyond a reasonable doubt the first two elements of the offense, then you shall find the [appellant] not guilty of first or second degree murder." In the appellant's view, this final portion of the elements instruction stated that the jury should acquit him if it found that the Commonwealth failed to prove *both* the first and second elements. Inferentially, then, under this view, the instruction, at worst, was merely *silent* regarding what the jury should do if it found that the Commonwealth failed to prove *either* the first element *or* the second element.

- 10 -

In the context of Rule 5A:18, based upon the record in this case, the challenged instruction was insufficiently flawed to justify application of the rule's ends-of-justice exception to excuse the appellant's failure to object at trial. The instruction did not "omit[] some essential element[] of the offense" under circumstances in which no evidence was presented on that element. Jimenez, 241 Va. at 251, 402 S.E.2d at 681. To the contrary, the instruction clearly defined the elements of first-degree and second-degree murder, and the appellant expressly stated, "I certainly don't object to that instruction." In addition, the presumption of innocence instruction directed the jury to "find the [appellant] not guilty unless and until the Commonwealth proves *each and every element* of the offense beyond a reasonable doubt." (Emphasis added). Consistent with that instruction, the finding instruction clearly presented a not-guilty verdict as one of the three options available to the jury. Furthermore, the jury found the appellant guilty of the greater of the two charged offenses, and sufficient evidence was presented to prove the elements of that offense.

The appellant's telephone records and the testimony of VanKirk established that on March 14, 2012, just two days before the bodies were found, the appellant had telephone contact with Parker and arranged to visit her to buy drugs. The appellant admitted to Detective Espinoza that he went to her motor home and obtained drugs from Parker that same day. Cellular telephone records confirmed that Parker's last outgoing phone call was to the appellant's voicemail at 10:13 p.m. on March 14, 2012. Parker answered an incoming call from VanKirk eight minutes later, at 10:21 p.m. All later incoming calls went to voicemail, and no further outgoing calls were made from Parker's phone. Despite over forty telephone calls between the two during the first two weeks of that month, the appellant made no effort to contact Parker by phone after March 14. Additionally, the appellant told Naill and Washington that he shot a man and woman in their Newport News motor home. He also told Naill that he let their dog live. He said that he took pills and cash and "partied" in a hotel room "for a couple of days." Several hundred dollars in cash was confirmed to be missing from the

victims' motor home, and the couple's dog was found alive, just as the appellant had reported. Finally, the forensic evidence proved that Parker was shot in the side of the forehead from point-blank range and Ezzell was shot twice, with both bullets entering above and behind his right ear. The appellant's use of a firearm, the way he shot the victims, the absence of any evidence indicating a struggle, and his behavior afterward supported a finding that he killed the victims with malice and premeditation. Thus, the record does not meet the requirements of Jimenez, 241 Va. at 251, 402 S.E.2d at 681.

Accordingly, the appellant cannot affirmatively show that a miscarriage of justice has occurred, as required to invoke the ends-of-justice exception to Rule 5A:18. Therefore, the rare exception does not apply, and the appellant's failure to make a contemporaneous objection bars our review of this assignment of error.

In light of our holding that this assignment of error is barred by Rule 5A:18 and that the only error properly before us was harmless, we need not consider the appellant's contention that the claimed errors, in combination, require the reversal of his convictions because there are no errors to combine. See Jeffries v. Commonwealth, 6 Va. App. 21, 29, 365 S.E.2d 773, 778 (1988).

### III. CONCLUSION

For these reasons, we hold that any error in refusing to instruct the jury on voluntary manslaughter was harmless. We further hold that our review of the challenged murder instruction is barred by Rule 5A:18 because the appellant failed to object to the wording of the instruction at trial and the ends-of-justice exception does not apply on the facts of this case. Finally, in light of our holding that this latter assignment of error is barred and that the only error properly before us was harmless, we need not consider the appellant's contention that the claimed errors, in combination, require reversal. Accordingly, we affirm the appellant's convictions.

Affirmed.