COURT OF APPEALS OF VIRGINIA

Present:  Judges Huff, Athey and Friedman

JESSICA MARGARET SITES-LONG

MEMORANDUM OPINION* BY
v.       Record No. 0755-21-3                    JUDGE CLIFFORD L. ATHEY, JR.
                                                 MARCH 1, 2022
RADFORD CITY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
Josiah T. Showalter, Jr., Judge

(Ryan D. Hamrick; Hamrick & Hamrick, P.C., on brief), for
appellant.  Appellant submitting on brief.

(Anne Park Brinckman; Zachary B. Smith, Guardian *ad litem* for the
minor children; Brinckman & Brinckman, P.C., on brief), for
appellee.  Appellee and Guardian *ad litem* submitting on brief.


Jessica Margaret Sites-Long ("mother") appeals the termination of her parental rights in

the Circuit Court for the City of Radford ("circuit court").  On appeal, mother argues that the

circuit court erred in finding there was sufficient evidence to terminate her parental rights.  For

the following reasons, we affirm.

I. BACKGROUND

Appellant is the mother of five minor children.  Mother's parental rights were initially

terminated in the Radford City Juvenile and Domestic Relations District Court ("the JDR

court").  Mother appealed the termination of her parental rights for a *de novo* trial in the circuit

court.  The parental rights of the children's father ("father") had previously been terminated.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At trial in the circuit court, Melissa Almond ("Almond"), a case worker for the Radford City Department of Social Services ("the Department"), testified that she had been involved in the children's cases over a long period of time. She testified that in March of 2018, the Department opened a Child Protective Services case against mother and father based on abuse, "mental health instability, and domestic violence." The JDR court had previously issued preliminary child protective orders on March 20, 2018, based on a finding that "each of the children had been abused and neglected." Child protective orders were also subsequently entered on September 14, 2018. The later orders required mother to take advantage of various services for herself and the children. Almond testified to significant noncompliance by both parents, including continued domestic violence. The JDR court amended the child protective orders on April 26, 2019, forbidding mother and father from having contact together in front of the children and from telling the children to hide information from their counselors. Mother and father violated this order by meeting in front of their children, where they fought and "the police were called." As a result, the children were moved to foster care.

Despite being provided with "a full range of services" (constituting "the most intensive services offered in [the] area") before and during the foster care cases, mother and father failed to resolve their domestic problems. At some point, father's attempted suicide and "a domestic situation" resulted in a television set being thrown through their car window. Mother was arrested for and later convicted of a variety of crimes: "five counts of felony child endangerment, five counts of contributing to the delinquency of a minor, a felony eluding charge, an assault on a law enforcement officer, and a [charge of] profane/threatening language over public airways." Mother was prohibited from seeing her children as a condition of her bond.

Once, mother contacted the Department and asked to drop off some things for the children. However, mother never did so and had no other contact with the Department. She never visited with the children, either, despite the Department's offer of visitation. She also failed to appear for appointments for services, "yell[ed] and curs[ed]" during others, left one before it was over, and rejected others. She also engaged in unauthorized contact with one of the children through an intermediary. Mother claimed to have visited the children while they were in the Department's custody or while Department staff were present but pled the Fifth Amendment on cross-examination to avoid answering questions about it.

Understandably, the children have suffered significantly. Continuances in the termination case precipitated "crisis incidents" for "most of the children." When the circuit court heard the case, four children were in adoptive homes but one was in a residential treatment program. The guardian *ad litem* recommended termination of parental rights because each child had "suffered significant trauma." His visits to discuss the case sometimes caused trauma to the children, including "nightmares, flashbacks, and acting-out." One child had recently "disclosed significant abuse by the mother and father." Two of the children said they wished to have contact with their parents, but the other three wished not to have any further contact. The Department recommended termination of parental rights to facilitate adoption.

Mother admitted to having been incarcerated much of the time since the children were removed, and she blamed her period of incarceration for not having contacted or visited the children and not having participated in many of the offered services. She claimed to have improved herself during her incarceration but admitted she had been addicted to methamphetamine in 2020. Mother claimed to have returned to her residence and begun seeking a job, but she admitted her home had inadequate heating for winter months.

The circuit court terminated her parental rights in each of the five children under Code § 16.1-283(B) and, in the alternative, under subsection (C)(1) and under (C)(2). This appeal followed.

## II. ANALYSIS

The record does not show that mother preserved her argument for appeal. Rule 5A:18 requires a contemporaneous objection to preserve an issue for appellate review, "except for good cause shown or to enable this Court to attain the ends of justice."

First, the good cause exception does not apply here. An appellant shows good cause for failing to object by showing it had no opportunity to raise the objection. *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (citing *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). Here, the good cause exception does not apply because mother's brief does not assert, and the record does not show, that she was unable to raise this issue below.

Second, the ends of justice exception does not apply here because the record indicates that not only is there no clear evidence that a miscarriage of justice would occur, but there is adequate evidence to support the circuit court's decision to terminate mother's parental rights. "To invoke the ends of justice exception, an appellant must affirmatively show[] that a miscarriage of justice has occurred[,] not . . . that a miscarriage *might* have occurred." *Id.* (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004) (*en banc*)) (first and third alterations in original) (emphasis in original) (internal quotation marks omitted). The error must have been "clear, substantial[,] and material." *Id.* at 668 (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). For instance, in a criminal case, the record must "clearly and affirmatively" demonstrate that one of the elements of the crime never happened or that the jury instructions on which the defendant were convicted did not contain every element. *Ali v. Commonwealth*, 280 Va. 665, 671 (2010); *Jiminez v. Commonwealth*, 241 Va. 244, 251 (1991).

In Virginia, a court may terminate a parent's residual parental rights under any of several statutory provisions contained in Code § 16.1-283. Here, the circuit court terminated mother's parental rights in the alternative pursuant to each of the following three subsections of Code § 16.1-283: (B), (C)(1), and (C)(2). Under subsection (C)(2), the court may terminate parental rights where

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

The record in this case is bereft of substantial evidence which would have established that mother's rights should not have been terminated or that one or more of the elements of the termination statute relied upon by the circuit court never occurred. The Department offered her the full range of services and provided opportunities for her to have visitation with her children. The children were in foster care for over a year because of her ongoing lack of fitness to take care of them. The guardian *ad litem* recommended termination of parental rights because each child had "suffered significant trauma." He joined the Department's brief on appeal.

Given her drug abuse, criminal convictions, inappropriate behavior during appointments and failure to appear for other appointments, failure to visit the children when visits were allowed, violations of the protective orders, and lack of adequate housing—not to mention one

- 5 -

child's enrollment in a residential treatment program and recent revelations by a child that the mother and father engaged in significant abuse of that child—we believe no miscarriage of justice occurred and the evidence was more than sufficient to terminate her parental rights under Code § 16.1-283(C)(2). We need not address the alternative grounds provided by the circuit court. *See Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018) (citing *Fields v. Dinwiddie Cnty. Dep't of Soc. Servs*, 46 Va. App. 1, 8 (2005)).

## III. CONCLUSION

Mother failed to show good cause for her procedural default. She also failed to show good cause or that a miscarriage of justice would occur if we declined to excuse her procedural default. Indeed, rather than showing that her rights should not have been terminated, the record contains ample evidence to support the circuit court's judgment.

*Affirmed.*