COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Willis and
          Senior Judge Overton
Argued at Alexandria, Virginia


ANTHONY RUMONT ROBERTS
                                    MEMORANDUM OPINION* BY
v.    Record No. 0322-00-4          JUDGE NELSON T. OVERTON
                                         FEBRUARY 6, 2001
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                        James L. Berry, Judge

          Walter F. Green, IV, for appellant.

          Michael T. Judge, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          brief), for appellee.


     On appeal, Anthony Rumont Roberts (appellant) contends the

trial court erred in (1) refusing to set aside the verdicts due to

the Commonwealth's failure to provide exculpatory evidence and (2)

questioning two jurors in camera midtrial without his being

present.  Finding no error, we affirm.

                              BACKGROUND

     On March 1, 1997, a jury found appellant guilty of the

September 12, 1996 murder of Kathy Hartley.  The jury also found

appellant guilty of feloniously and maliciously shooting into an

occupied vehicle and using a firearm in the commission of murder.

───────────────────

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On July 25, 1997, prior to the imposition of sentence, appellant argued for a new trial based on, inter alia, the Commonwealth's failure to provide exculpatory information about one of its witnesses and the trial court's in camera questioning of two jurors during trial without appellant being present.

FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

After the jury found appellant guilty, appellant learned that Robert Moore, one of the witnesses at appellant's February 28, 1997 trial, had been arrested in Frederick County on June 27, 1996 for driving under the influence and speeding. His February 1997 trial on those charges was continued until a date after appellant's trial. At Moore's DUI trial, he was placed on probation. At the July 25, 1997 hearing, the prosecutor conceded that knowledge of Moore's charges was properly imputed to his office, however, he proffered that no one in his office was aware of Moore's charges at the time. The prosecutor further represented that Moore never asked for, nor did anyone give him, a deal or special treatment in exchange for his testimony. Appellant contends that withholding such evidence in the possession of the Commonwealth required the trial court to set aside the verdict and grant him a new trial.

Due process requires the Commonwealth to disclose all exculpatory evidence to an accused. Allen v. Commonwealth, 20 Va. App. 630, 637, 460 S.E.2d 248, 251 (1995) (citing Brady v. Maryland, 373 U.S. 83 (1963)). "Exculpatory evidence" is defined

-

as evidence that is "material to guilt or punishment and favorable to the accused," id., and includes impeachment evidence.  See United States v. Bagley, 473 U.S. 667, 676 (1985); Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986).  Evidence is "material," and its nondisclosure justifies reversal on appeal, only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Bagley, 473 U.S. at 682; see Correll v. Commonwealth, 232 Va. 454, 465, 352 S.E.2d 352, 358 (1987).  "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'"  Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998) (quoting Bagley, 473 U.S. at 682).  Therefore, appellant "must show that when the case is evaluated in the context of the entire record, including the omitted evidence, a jury would have entertained a reasonable doubt" as to appellant's guilt.  Id.  "The mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense."  United States v. Agurs, 427 U.S. 97, 109-10 (1976).

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).  So viewed, the evidence proved that, around 6:30 p.m. on September 12, 1996, Willie Burns was driving a Ford Escort in which Hartley

-

was shot and killed while a front seat passenger.  Chansey Fasano was a rear seat passenger in the car.

Burns testified that he started dating Hartley about a month before her death.  Prior thereto, she dated and lived with appellant.  About two weeks before the murder, Burns was present when Hartley told appellant she no longer wanted to be with him, she wanted to be with Burns.  Burns explained how, on September 12, 1996, appellant recognized him driving Hartley and Fasano through town and followed them in his white Mitsubishi 3000GT.  Burns tried to elude appellant, but was unable to do so.  Appellant followed Burns onto an entrance ramp to Interstate 81.  When appellant's car approached Burns' car from the right side, Hartley yelled out that appellant had a gun.  Seconds later, Burns heard a gunshot, and Hartley fell over beside him.

Fasano corroborated Burns' account of how appellant followed and chased them.  Fasano heard the fatal gunshot and saw Hartley slump over onto Burns' shoulder.

Carey Davis met and spoke with appellant in the afternoon on the day of the murder.  Davis and Hartley conversed for a short time.  When Davis indicated she had to go, appellant said, "'I have got to find that crazy-ass Kathy.'"  Appellant also told Davis, "'One of the these days I am going to kill that girl.'"

A few days before the murder, appellant visited Susan French, a special prosecutor for the City of Winchester.  French testified that appellant was concerned that Hartley had become associated

-

with persons dealing in illegal drugs and had again become addicted to crack cocaine.  Appellant offered to work undercover. French wrote down the information and said she would contact local authorities.  French testified that appellant told her that "[s]omebody had better get it under control" and that, "if somebody didn't get it under control," and if "Kathy didn't get off the drugs," appellant "was going to have to kill Kathy."

Two days before the murder, James Jackson visited Hartley, a former co-worker.  Appellant was present.  Jackson testified that appellant "had a gun."  When Hartley walked Jackson to the door so he could leave, appellant "[t]urned the gun" at Hartley.

Douglas Delagaetano, a forensic scientist, tested evidence collected from appellant's car by police.  He found gunshot residue from samples taken from the steering wheel and on the driver's side doorpost.

Sometime before 10:00 p.m. on the day of the murder, appellant left a note for his son at Melissa Thomas' house.  The note read, in pertinent part,

> I leave you all my worldly belongings.
> Please be good and always remember not to be
> bad like me.

The day after the murder, Robert Moore recognized a newspaper photograph of the Escort driven by Burns, so he contacted authorities to report an incident he witnessed the previous day while driving.  He testified that, around 6:40 p.m. on September 12, 1996, a sports car resembling appellant's passed him on the

-

right shoulder of an interstate entrance ramp.  Moore described the driver as a fair-skinned African-American man.  Once on the highway, the car pulled behind a car resembling the one driven by Burns.  Moore looked down at his dashboard, then "heard a pop."  Moore then saw the Escort swerve from the travel lane to the shoulder and back while the car resembling appellant's car sped away.

Appellant has failed to prove there is a reasonable probability that, had the evidence of the criminal charges against Moore been disclosed to the defense, the result of the proceeding would have been different.  See Bagley, 473 U.S. at 682.  Moore's testimony was merely cumulative of the testimony of Burns and Fasano.  Thus, absent Moore's testimony, we find the testimony of Burns and Fasano, in conjunction with other evidence of appellant's statements and conduct before and after the murder, more than sufficient to prove beyond a reasonable doubt that appellant was the murderer.  Accordingly, the trial court did not err in denying appellant's motion for a new trial.

### DENIAL OF RIGHT TO PUBLIC TRIAL

After the presentation of evidence by both parties, the trial court advised the parties that two jurors admitted knowing Eric Roberts, appellant's brother and a witness for the defense.  When he testified, they recognized him as a bus driver with whom they were familiar.  The trial court agreed with defense counsel that it should voir dire the two jurors before the jury began

-

deliberating.  Appellant, through counsel, initially asserted that he should be present when the trial court questioned the jurors. However, the following colloquy then occurred between the trial court and counsel:

> [DEFENSE COUNSEL]:  Would the Court want to do it without us here and then tell us on the record what occurred?  Do you think the [two] Jurors would be less intimidated by that?  Perhaps that might be the best way to do it.
>
> THE COURT:  I have no objection, particularly if you propose it, but –
>
> [DEFENSE COUNSEL]:  I think I will propose it that way.  I certainly trust Your Honor's ability to ask them the right questions and perhaps with nobody in the courtroom, it might be certainly less intimidating.
>
> [PROSECUTOR]:  I agree.
>
> [DEFENSE COUNSEL]:  I agree with that too.

The trial court advised counsel that it would notify them if it appeared either juror's familiarity with the defense witness presented "a problem" with their continuing to sit on the jury.

The two jurors admitted knowing Eric Roberts through his employment as a bus driver.  Both jurors indicated that they had no personal or social relationships with Roberts, they were not biased in any way against him, and they could judge his credibility fairly and impartially.  After the in camera meeting with the jurors, the trial court advised counsel, "Gentlemen, I investigated the matter we discussed earlier and found no

-

difficulty."  Defense counsel thanked the trial court, after which the trial court instructed the jury.

Assuming that this was a critical stage of the proceedings, appellant cannot now complain that the trial court erred when it did as he requested through counsel.  "'No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate - to invite error . . . and then to take advantage of the situation created by his own wrong.'"  Manns v. Commonwealth, 13 Va. App. 677, 680, 414 S.E.2d 613, 615 (1992) (quoting Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)).  See also Doe v. Simmers, 207 Va. 956, 960, 154 S.E.2d 146, 149 (1967).  Accordingly, the trial court did not commit reversible error.

For the foregoing reasons, the judgment of the trial court is affirmed.

                                        Affirmed.

-