### Richmond

AUDREY ANN JACKSON

v.

COMMONWEALTH OF VIRGINIA

No. 1417-90-2

Decided February 4, 1992

■■■■■■■■■

COUNSEL

Lucretia A. Carrico (Hayes & Carrico, on brief), for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Audrey Ann Jackson, defendant, appeals from her conviction of grand larceny by embezzlement in violation of Code § 18.2-111. On appeal, she asserts that, because carbon copies of vouchers were not properly authenticated, the trial court erred in admitting them. We affirm the judgment of the trial court.

Defendant was employed with Dollar General Store from November 25, 1989, to mid-December 1989. The evidence at trial showed that, in December, defendant enticed customers to sign their names either on pieces of paper or in a small spiral notebook, allowing them to believe they were signing up for a raffle. In reality it is alleged that the customers were signing a petty cash voucher book, used when customers returned merchandise for reimbursement.

The Commonwealth introduced the petty cash voucher book into evidence. Its pages consisted of carbon copies made simultaneously with the original. Whenever a customer returned merchandise for reimbursement, the routine practice was that the original voucher and the carbon copy were filled in. The original was then torn from the book, placed into a cash register, and treated as cash. In other words, the carbon copies that remained

in the voucher book were treated by the store as the original record of the return and reimbursement.

Several customers testified that, although their signatures appeared on these petty cash receipts, they had neither returned the merchandise indicated by the voucher nor received a reimbursement from the store. They further testified to their belief that they had been entering a raffle at the time they signed their names. Each of these customers stated that defendant had encouraged them to sign their names, and defendant's signature appeared on all of the receipts.

As an initial matter, the Commonwealth contends that, because defendant objected to admission of the petty cash vouchers solely on the basis of the best evidence rule, she cannot now object on the ground that the carbon copies were not properly authenticated. However, as the Commonwealth itself concedes, Code § 8.01-391, which concerns copies of originals as evidence, is a statutory exception to the best evidence rule, and it is on the specific terms of Code § 8.01-391 governing authentication that defendant relies for her argument on appeal. We find no reason to hold that, because defendant objected generally on the ground of the best evidence rule, she cannot now argue that a specific statutory exception to the best evidence rule applies.

The Commonwealth asserts that, because Code § 8.01-391 is a statutory exception to the best evidence rule, it is not relevant to the issue of authentication. We do not agree. Code § 8.01-391(C) governs the admissibility of copies of business records, and it expressly sets out the manner in which such copies must be "identified and authenticated as true."

If any business or member of a profession or calling in the regular course of business or activity has made any record, and again in the regular course of business has caused any or all of such record to be copied, the copy shall be as admissible in evidence as the original, whether the original exists or not, provided that such copy is satisfactorily identified and authenticated as a true copy both by the custodian of such record and by the person to whom said custodian reports, if they be different, and is accompanied by a certificate that said person does in fact have the custody.

Code § 8.01-391(C). A Revisers' Note following Code § 8.01-391 explains that the purpose of subsection C is to place copies of "business records on the same evidentiary footing as the original provided such copy is doubly authenticated."

Defendant asserts that the question before this Court is whether the carbon copies were properly authenticated under Code § 8.01-391(C). However, a threshold question must first be addressed: are the carbon copies of the vouchers at issue on this appeal "copies" under Code § 8.01-391(C)?

■ The language of Code § 8.01-391(C) clearly indicates that it applies in situations where the making of an original and the making of a copy of that original are two separate events. The statute applies "[i]f any business . . . in the regular course of business . . . has made any record, and again in the regular course of business has caused any or all of such record to be copied." Because the routine practice was that the carbon copies of the petty cash vouchers were made simultaneously with the original ink copies, we hold that Code § 8.01-391(C) does not control determination of this case.

■ Because Code § 8.01-391(C) does not apply, we turn to the non-statutory means by which a proponent may establish a document's authenticity. In doing so, we keep in mind that the general standard for authentication of a document is not particularly strict. "Authentication is merely the process of showing that a document is genuine and that it is what its proponent claims it to be." *Owens v. Commonwealth*, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990).

■ Of the four basic non-statutory means of authentication, only two, direct evidence and testimony as to the genuineness of handwriting, are relevant here.[1] Direct evidence involves witnesses testifying as to the origin or execution of a document. C. Friend, *The Law of Evidence in Virginia* § 180 (3d ed. 1988). During the course of the trial, the Commonwealth introduced direct evidence concerning the origin and execution of the carbon copy vouchers. Carolyn Hughes, a management trainee with Dollar General at

---

[1] The other two are admission and waiver, where parties stipulate or admit the authenticity of a writing, and circumstantial evidence, where surrounding circumstances establish that a writing is genuine. C. Friend, *The Law of Evidence in Virginia* § 180 (3d ed. 1988).

the time of the embezzlement, testified that the petty cash voucher book was the official store ledger for merchandise returns and customer reimbursements and that the carbon copies contained in the book were duplicate originals of the official record. This evidence itself would have been enough to establish that the petty cash voucher book was "what its proponent claims it to be." *Owens*, 10 Va. App. at 311, 391 S.E.2d at 607. Here, there was also handwriting evidence.

■ Handwriting evidence is testimony by expert witnesses and by lay witnesses familiar with the handwriting of the person involved. C. Friend, *supra*, § 180. After being shown the voucher book, three customers testified that they had signed their names to the vouchers. "If direct testimony of the authorship of a writing . . . is given, this is sufficient authentication. . . . The writing . . . comes in, if not otherwise objectionable." E. Cleary, *McCormick on Evidence* § 227 (3d ed. 1984).

■ "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citing *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)). The trial court did not err in admitting the petty cash voucher book into evidence and its judgment is affirmed.

*Affirmed.*

Koontz, C.J., and Bray, J., concurred.