COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


JOHNNY LUNDY

v.    Record No. 3194-96-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM H. HODGES
NOVEMBER 25, 1997


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

> Thomas L. Watkins, Deputy Public Defender
> (Office of the Public Defender, on brief),
> for appellant.
>
> John K. Byrum, Jr., Assistant Attorney
> General (Richard Cullen, Attorney General, on
> brief), for appellee.


Johnny Lundy, appellant, was convicted of grand larceny.
On appeal, appellant asserts that the trial court erred in
admitting a document into evidence. Appellant also argues that
the evidence was insufficient to prove that he committed grand
larceny. For the following reasons, we affirm appellant's
conviction.

### Facts

On November 3, 1995, at about 3:00 or 4:00 p.m., power tools
were stolen from the victim's van. The stolen tools consisted of
a Makita table saw, a Roybi chop saw, a Hitachi chop saw, two
Craftsman routers, a Roll Air air compressor, four Makita drills,
and two Pass Load nail guns.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Jeffrey Knight testified that, at about 5:00 or 6:00 p.m., on November 3, 1995, appellant asked Knight to sell some tools to a pawn broker for him. Knight had never met appellant before this incident. Knight accompanied appellant to Gene Daniels' auction house where they pawned five or six "electric" items, including "some drills" and a "hand planer."

The Commonwealth showed Knight Commonwealth's Exhibit 1, a document containing a "Gene Daniels" logo, the number "5467," "Page 1," and dated "11-3-95." Knight testified that Exhibit 1 contained a list of the items that appellant asked him to pawn and that it contained Knight's signature. Knight could not identify Commonwealth's Exhibit 3, a document containing the same "Gene Daniels" logo, "Page 2," a list of power tools, and the partial handwritten number "5_67."[1]

Gene Daniels, the owner of an auction house, testified that he purchased some tools from Knight and appellant on November 3, 1995. Daniels testified that Exhibit 1 contained both his handwriting and the handwriting of one of his employees, but he could not identify which employee. Daniels also testified that Exhibit 3 contained handwriting from "the same person" who wrote Exhibit 1 and that the exhibits "go together" because Exhibit 1 "says continued on Page 2."[2] Daniels stated, "Each document is

---

[1] Exhibit 3, as submitted in the record for appeal, has a hole punched through the handwritten number, so that the number "5_67" appears on the exhibit.

[2] Exhibit 1 actually says "Content on Page 2" near the bottom of the document.

2

numbered; and 5467, if you go to the next page, we write that at the top of the page." Included in the listing on the two exhibits were the same type of tools described by the victim and made by the same manufacturers.

Daniels also testified that he had previously purchased tools from appellant which the police had confiscated from Daniels concerning another case. A few days to a week before November 3, 1995, Daniels advised appellant that he would not purchase tools from him until that matter was "straightened out."

### Admissibility of Exhibit 3

At his trial, appellant objected to the admissibility of Exhibit 3, arguing that Daniels could not identify the handwriting on the document and that there was never "any identification of [Exhibit 3] being related to the first page [Exhibit 1]." The trial judge overruled appellant's objection and admitted Exhibit 3 into evidence.

In his brief, appellant argues that Exhibit 3 contained hearsay and that the Commonwealth failed to qualify the document under the business records exception to the hearsay rule. However, at trial, appellant did not make a hearsay objection or make a business records argument to the trial court concerning the admissibility of Exhibit 3. The Court of Appeals will not consider an argument on appeal which was not presented to the trial court. See Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18). Therefore, Rule

3

5A:18 bars our consideration of these arguments on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

Appellant also argues that Exhibit 3 was not admissible because it was not properly identified by Daniels, the auction house owner. "Before any writing may be introduced into evidence, it must be authenticated, 'which is the providing of an evidentiary basis sufficient for the trier of fact to conclude that the writing came from the source claimed.'" Ragland v. Commonwealth, 16 Va. App. 913, 919, 434 S.E.2d 675, 679 (1993) (citation omitted). "Authentication is merely the process of showing that a document is genuine and that it is what its proponent claims it to be." Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990).

Concerning the authenticity of Exhibit 3, the Commonwealth presented direct evidence as to the origin and execution of the document and testimony as to the genuineness of the handwriting on the document. See Jackson v. Commonwealth, 13 Va. App. 599, 602, 413 S.E.2d 662, 665 (1992). Daniels, the owner of the auction house, testified that he recognized Exhibit 1 and that the document contained both his own handwriting and the handwriting of one of his employees. "'If direct testimony of the authorship of a writing . . . is given, this is sufficient authentication . . . . The writing . . . comes in, if not otherwise objectionable.'" Id. at 603, 413 S.E.2d at 665

4

(citation omitted).  Daniels also stated that Exhibits 1 and 3 "go together"; that it was the practice at his business to continue onto another page when listing numerous items; that they would write the ticket number from the first page onto the second page when needed; and that Exhibit 3 had the same number, "5467," as Exhibit 1.  He testified that Exhibit 1 indicated that the document was continued onto a page two and that the items listed were the items brought into the store by appellant and Knight on November 3, 1995.  Thus, the evidence established that Exhibit 3 was "'what its proponent claims it to be.'"  Id. (citation omitted).

Further, Exhibit 1 was authenticated by Knight's testimony that Exhibit 1 contained a list of the items that he and appellant sold to Daniels.  It also contained Knight's signature.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  From Daniels' testimony, and from the fact that both exhibits appear to contain the same handwriting, the two documents were sufficiently linked so that the authenticity of Exhibit 3 was established.  Cf. Washington v. Commonwealth, 228 Va. 535, 550, 323 S.E.2d 577, 587 (1984) ("If the exhibit has a unique characteristic by which it may be identified and distinguished with reasonable certainty from others of its kind, identification

by that characteristic is sufficient proof of authenticity."). Therefore, the trial court did not err in admitting Exhibit 3 into evidence.

## Sufficiency of the Evidence

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Appellant contends that, because only "some" of the items connected with him were similar to items taken from the victim, the evidence was insufficient to find that he was in exclusive possession of recently stolen property and was, therefore, guilty of the theft of the property. However, "[w]hen an accused is found in possession of goods of a type recently stolen, strict identity of the goods is not required." Henderson v. Commonwealth, 215 Va. 811, 812-13, 213 S.E.2d 782, 783 (1975).

> "'It is not necessary that the identity of stolen property should be invariably established by positive evidence. In many such cases identification is impracticable, and yet the circumstances may render it impossible to doubt the identity of the property, or to account for the possession of it by the accused upon any reasonable hypothesis consistent with his innocence.'"

Id. at 813, 213 S.E.2d at 783 (citation omitted).

The evidence proved that appellant possessed certain power tools that were goods of the same distinctive types as those stolen from the victim and that appellant possessed this unique

6

combination of tools within two hours of the theft.  Further, appellant approached a complete stranger to assist him in pawning the tools.  Moreover, the owner of the auction house had advised appellant that he would not purchase tools from him because prior purchases were under police investigation.  Considered together, these circumstances support an inference that the drill, nail gun, compressor, and two routers pawned by appellant and Knight were tools stolen from the victim.  "It is immaterial that the quantity of goods possessed was less than the quantity stolen and charged in the indictment, for the fact-finder 'may infer the stealing of the whole from the possession of part.'"  Id. at 813, 213 S.E.2d at 784 (citation omitted).  From the evidence of appellant's recent possession of the stolen items, the fact finder could also reasonably infer that appellant stole the items.  See Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987).  Therefore, the evidence was sufficient to prove beyond a reasonable doubt that appellant committed grand larceny.

For the foregoing reasons, the judgment of the trial court is affirmed.

                                        Affirmed.

7

Benton, J., concurring and dissenting.

I agree that the trial judge did not err in admitting Commonwealth's Exhibit 3 into evidence. I dissent, however, from that portion of the majority opinion holding that the evidence was sufficient to support the conviction.

"[W]here, as here, a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). "It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt." Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). See Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981) ("Suspicion, however, no matter how strong, is insufficient to sustain a criminal conviction."). Thus, the evidence must "establish . . . guilt beyond a reasonable doubt." Webb, 204 Va. at 34, 129 S.E.2d at 29. Because the evidence in this case fails to prove beyond a reasonable doubt that Johnny Lundy possessed the items stolen from William Monroe, I would reverse the conviction.

Although, "possession of goods recently stolen is prima facie evidence of guilt [of the crime of larceny]," Fout v.

8

<u>Commonwealth</u>, 199 Va. 184, 190-91, 98 S.E.2d 817, 821-22 (1957), the evidence must prove that the items were in fact stolen. Thus, the victim must identify in some way the items recovered as those that were stolen. In this case, the articles that were in Lundy's possession shortly after the theft were not sufficiently identified as the articles stolen from Monroe.

Where the articles are not sufficiently identified, the evidence is insufficient to convict the defendant of larceny. <u>Barnett v. Commonwealth</u>, 210 Va. 348, 349, 170 S.E.2d 760, 761 (1969). In <u>Barnett</u>, the evidence proved that the defendant was in the vicinity of the victim's home on the day of the theft and that he was "in possession of articles meeting the general description of those stolen from [the victim]." <u>Id.</u> The Commonwealth introduced some of the stolen items at trial. "Although [the victim] took the stand, he did not identify any of those articles or even express an opinion whether they belonged to him. So the person who was in the best position to prove the Commonwealth's case or to acquit [the defendant] gave no testimony on this crucial issue." <u>Id.</u> Thus, the victim's unexplained failure to make an identification made the evidence insufficient to support the conviction. <u>See also</u> <u>Griffith v. Commonwealth</u>, 213 Va. 50, 51, 189 S.E.2d 366, 367 (1972) (holding that while the actions of the defendant "were suspicious," the evidence in total was not sufficient to prove beyond a reasonable doubt that the goods the defendant was seen carrying near the

9

victim's apartment were the goods which had been stolen).

The majority relies on Henderson v. Commonwealth, 215 Va. 811, 213 S.E.2d 782, (1975), where the Supreme Court of Virginia held that "when an accused is found in possession of goods of a type recently stolen, strict proof of identity of the goods is not required." 215 Va. at 813, 213 S.E.2d at 783. Relying on Kelly v. Commonwealth, 181 Va. 576, 26 S.E.2d 63 (1943), and Gravely v. Commonwealth, 86 Va. 396, 10 S.E. 431 (1889), the Court held that under the circumstances proved in Henderson, there was "no room for reasonable doubt" that the goods the defendant possessed were the goods stolen. 215 Va. at 813, 213 S.E.2d at 783. However, the Supreme Court in Barnett distinguished Kelly, 181 Va. at 578, 26 S.E.2d at 64 (involving larceny of clothing whose labels had been removed), and Gravely, 86 Va. at 396, 10 S.E. at 432 (involving burglary of flour, meal, and eggs), because "[t]he stolen articles in those cases were not capable of specific identification." Barnett, 210 Va. at 349-50, 170 S.E.2d at 761.

In this case, Monroe testified that several of his carpentry tools had been stolen from his van. Monroe listed the names and manufacturers of each of the tools stolen. These articles included a table saw, two chop saws, two routers, an air compressor, a finish nail gun, and four drills, two or which were cordless.

Jeffrey Knight testified that Lundy gave him fifteen dollars

10

to pawn several items at the pawn shop because Lundy did not have identification with him. Knight testified that Lundy gave him five or six items to pawn, including some electric drills and a hand planer. At trial, Commonwealth's Exhibits 1 and 3 listed the items that had been purchased by the pawn shop. The list on Exhibit 1 included two rotary hammers, a power planer, a hammer drill, and two drills. Exhibit 3 listed a table saw, a miter saw, a drill, two routers, a plane, a circular saw, and an air compressor. The serial numbers and model numbers, as well as the manufacturers of the tools, were also listed.

Although some of the items pawned by Knight for Lundy were similar in a general description to some of the items Monroe testified were stolen from him, the evidence did not further identify the pawned tools as belonging to Monroe. These items were not such that they could not be specifically identified. Furthermore, "[t]here is no suggestion that [Monroe] could not have specifically identified any of the articles." Barnett, 210 Va. at 349, 170 S.E.2d at 761. The Commonwealth did not produce the items, or pictures of the items, at trial for Monroe to identify. The Commonwealth did not match the serial numbers, model names, or model numbers of the items recovered with the items Monroe listed as missing. Monroe never identified the items listed on Exhibit 1 or 3 as his. Nowhere in the record were the tools identified as being the tools stolen from Monroe.

Under these facts, "there exists a serious void in the

11

proof, filled only with the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction."  Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968).  The evidence is insufficient to prove beyond a reasonable doubt that Lundy possessed items belonging to Monroe.  Therefore, I dissent.