COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Beales
Argued at Alexandria, Virginia


CECILIA ALEXIS RUIZ

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1915-07-4                      JUDGE JAMES W. HALEY, JR.
                                                       DECEMBER 23, 2008

COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            J. Howe Brown, Judge Designate

            Mark J. Yeager (Anna K. Livingston; The Law Offices of Yeager &
            Thelin, on brief), for appellant.

            Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Cecilia Alexis Ruiz ("Ruiz") appeals her conviction for forging a public record in

violation of Code § 18.2-168.  This case presents eight questions for resolution.  Ruiz preserved

four of these questions for appeal by making a timely objection to the disputed rulings in the trial

court.  On brief, she concedes that trial counsel did not preserve for appeal the other four

questions presented.  However, she argues that these questions are appropriate for review under

the "ends of justice" exception to the contemporaneous objection requirement of Supreme Court

Rule 5A:18.  For the following reasons, we affirm her conviction.

                                            FACTS

        Officer Douglas Middlebrooks ("Middlebrooks") of the Fairfax County Police

Department stopped a car driven by Munir Dellawar ("Dellawar") on August 19, 2004.  As a

result of his investigation, Middlebrooks charged Dellawar with drunk driving in violation of

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Code § 18.2-266 and with unreasonable refusal to take a breath test in violation of Code § 18.2-268.2. Middlebrooks was present in the Fairfax General District Court on November 12, 2004 when the court resolved Dellawar's charges. Middlebrooks later testified at Ruiz's trial that Dellawar entered a guilty plea to the drunk driving charge and, in exchange, the Commonwealth ordered a *nolle prosequi* of the refusal charge.

Early the next year, Middlebrooks came to the assistance of another police officer after that officer had stopped a car, the driver of which Middlebrooks recognized as Dellawar. During the time Dellawar was stopped on the side of the road, he had two conversations with Middlebrooks. During the first conversation, they discussed Dellawar's previous arrest for DUI and the court's issuance of a restricted driver's license. During the second conversation, just after Middlebrooks had briefly left the side of the car to speak to the other officer, Dellawar told Middlebrooks he was never found guilty of DUI. Because this statement was inconsistent with Middlebrooks' memory of what had happened in court, Middlebrooks checked Dellawar's license information using the computer in his police vehicle. The computer system showed no conviction for DUI. After letting Dellawar drive away, Middlebrooks told his supervisor about the incident and the police began an investigation.

As a result of that investigation, Dellawar testified at Ruiz's trial. He testified that, between the time of his initial arrest (August 19, 2004) and the time of his court appearance (November 12 of the same year), he spoke to a friend of his, Cesar Monteverde ("Monteverde"). Monteverde told him that he knew someone in the courthouse who might be able to "take care of" the DUI. Monteverde and Dellawar drove to a house in Fairfax County where Dellawar met Ruiz, who worked for the Commonwealth's Attorney as a management analyst.

Dellawar testified that Ruiz advised him to plead guilty to the DUI. After his guilty plea, Dellawar was told to wait until his attorney left the courthouse and ask for a *de novo* appeal to the circuit court. When the clerk asked him to choose a trial date in circuit court, Dellawar was to choose the furthest date available. Ruiz told Dellawar that the clerk's office would keep his file for at least ten days. Ruiz said that she had access to all of the folders and the computer system. She told Dellawar that she would remove his file and scramble his name in the computer system. Dellawar testified that, when he appeared in court on November 12, he followed Ruiz's instructions by entering a guilty plea to the DUI and filing an appeal to the circuit court at the clerk's office.

Dellawar also testified that he met with Ruiz a few weeks later in a parking lot off of Little River Turnpike in Fairfax County. At this meeting she gave him two documents, which were introduced into evidence at Ruiz's trial. Each document is styled "Traffic Hearing/Disposition Update." Each document had Dellawar's case number on it. The first document, admitted into evidence as Commonwealth's Exhibit 2, listed the charge as "HOV violation," and spelled the defendant's name "War Shah." The other document, admitted as Commonwealth's Exhibit 3, listed the charge as "DWI 1st" and had listed Dellawar as the defendant. Nothing on Commonwealth's Exhibit 3 indicates that Dellawar was convicted. Also on Commonwealth's Exhibit 3 is a date stamp with an attestation clause, purporting to authenticate the document as a record of the Fairfax County General District Court. The stamp is dated 2/23/05, and the attestation clause is signed Cheryl Cinfo. Dellawar testified that Ruiz told him that the date-stamped document was a certified copy from the court and that he could show it to anyone who inquired about his DUI case. Dellawar testified that he gave Ruiz one thousand dollars in cash, though there was no specific agreement regarding compensation.

Cheryl Cinfo, who was the manager of the criminal division of the Fairfax County General District Court clerk's office in 2005, testified that she did not sign the document that Dellawar testified Ruiz had given him. Ms. Cinfo also denied that she had authorized anyone else to sign her name.

Sergeant Fulton, of the Fairfax County Police Department, testified that, after speaking with Dellawar, he attempted to retrieve the files corresponding to Dellawar's DUI and refusal cases from the Fairfax County General District Court. Fulton testified that the clerks were unable to locate the files for him.

Dellawar testified that he met with Ruiz one other time after his second traffic encounter with Middlebrooks made him anxious that the police might discover what had happened. After a few phone conversations, Dellawar and Ruiz met at a restaurant called Mango Mike's in Alexandria.

> Q: Did you express your concern to her?
>
> A: I did. When she finally did come to that Mango Mike's place we had a conversation in the corner. She told me – she said, "Look, don't worry. I know everything that's going on with this case."
>      She said, "I see every email that goes to the District Attorney." She even mentioned that there's no way that it would go back to me or to her because they were – the investigators that were investigating she said were actually thinking that it was a different girl in the Clerk's office because the name that was signed on that one document is the person who they thought had done all this for me.
>
> Q: Did she say how she knew what the investigators were thinking?
>
> A: She said – yeah, because she said she worked directly in the District Attorney's office and that she could hear conversations when, like, for example, the officer who was investigating this – I forgot his name – Officer Fulton – when they had conversations in the District Attorney's she

said she could literally overhear them on when they were thinking whether they should arrest me or not, and, you know, different bits and pieces of information that she was telling me about.

Q:    Did she tell you whether or not she had ever done this successfully before?

A:    She did.  She said this is – there is no way that it could come back.  She said this is a very – she said "I pretty much mixed up the records so much that there is no way it could come back."

A jury convicted Ruiz of forging a public document.  This appeal followed.

1)  Did the Trial Court Err in Admitting Disputed
Telephone Records into Evidence?

The Commonwealth offered into evidence two documents to show that Dellawar had made telephone calls to Ruiz on November 12, 2004, the day he entered a guilty plea to the DUI charge and immediately appealed.  Commonwealth's Exhibit 4 is a letter to Sergeant Fulton of the Fairfax police from an analyst at the T-Mobile Company, which was sent in response to a *subpoena duces tecum*.  According to the letter, a search of T-Mobile's records indicates that Ruiz established a T-Mobile account in August 2004.  The letter also lists Ruiz's phone number, and indicates that her number was disconnected in March of 2005.  Commonwealth's Exhibit 5 is an AT&T Wireless telephone record listing all of the calls made to and from Dellawar's mobile telephone between 4:14 p.m. on November 9, 2004 to 11:09 a.m. on November 13.  The list indicates that Dellawar's phone made two calls to Ruiz's T-Mobile telephone on November 12, 2004, the first at 8:53 a.m., and another at 10:50 a.m.

The parties entered into the following pretrial stipulation regarding these two exhibits:

[PROSECUTOR]:  One other housekeeping matter.  I just wanted to put one record, there may be evidence on behalf of the Commonwealth that consists of telephone records.  One record is that showing

- 5 -

what the Defendant's phone number was during that period of time. And second, record from a witness's telephone showing that he made two calls to her. Counsel and I have stipulated there's no need to authenticate those records for the purposes of trial –

[DEFENSE COUNSEL]: That's correct.

[PROSECUTOR]: -- while preserving any other objections that defense might have.

At trial, Ruiz objected that the Commonwealth had not laid a proper foundation for the admission of the records. Citing Penny v. Commonwealth, 6 Va. App. 494, 370 S.E.2d 314 (1988), she suggested that, for the foundation to be adequate, the Commonwealth would need to produce a witness who could testify to the reliability of the computer system that generated the disputed records. The trial court asked both parties about the nature of their pretrial stipulation.

[THE COURT]: What was the stipulation with regard to these two exhibits?

[PROSECUTOR]: The stipulation was that it would not be necessary for us to bring a custodian of the records to testify as to the foundation for this business records exception. The Commonwealth represented these to be authentic records and they would not require me to bring in that witness.

[THE COURT]: Is that right?

[DEFENSE COUNSEL]: Your Honor, we – I was very careful with Mr. Willett about this. I told him I would not object to the authenticity that they are – that is a T-Mobile – it says T-Mobile. It is a document that shows a response from a subpoena duces tecum request.
But we reserved on the record that I would have all other objections to the other elements of foundation. Specifically with regard to the phone records, the actual call log –

*    *    *    *    *    *    *

[THE COURT]:  So you think they have to bring the computer operator in?

[DEFENSE COUNSEL]:  They don't.  But they need to bring someone in to testify about the reliability of the machine that creates that.

[THE COURT]:  Well, if it's an authentic record, why would they have to do that?

[DEFENSE COUNSEL]:  Because authentication is something solely separate from reliability.

On appeal, Ruiz argues that the trial court erred in admitting the phone records over her objection.  Citing Charles E. Friend, The Law of Evidence in Virginia, § 15-1 (5th ed. 1999), Ruiz states, correctly, that authentication of a document is a necessary, but not sufficient, condition for the admissibility of a document into evidence.  Thus, the pretrial stipulation between the parties, expressly reserving Ruiz's right to object to the records on grounds other than that they were not authentic business records, was not a reason to deny her objection based on improper foundation.  This objection to improper foundation should have been granted, Ruiz continues, pursuant to our decision in Penny, in which we held that the foundation for the introduction into evidence of records produced by a computerized "call-trap" device required a showing of scientific reliability, and not a showing that the records fit into an exception to the hearsay rule.  Penny, 6 Va. App. at 499, 370 S.E.2d at 317.

In response, the Commonwealth argues that Ruiz's objection regarding the reliability of the device was waived by the parties' pretrial stipulation because the business record exception to the hearsay rule exists *only* because such records are reliable.  They are prepared regularly, relied upon in the ordinary course of business, and kept by a disinterested recordkeeper.  The Commonwealth particularly emphasizes language from our Supreme Court's decision in 1924

- 7 -

Leonard Road, LLC v. Van Roekel, 272 Va. 543, 556, 636 S.E.2d 378, 386 (2006), suggesting that authentication and foundation are practically the same concept for the purposes of the business records exception to the hearsay rule. The Commonwealth also relies on Kettler & Scott v. Earth Technology Cos., 248 Va. 450, 457, 449 S.E.2d 782, 785 (1994) ("In determining the admissibility of computer records, when the argument has been advanced that they are inadmissible hearsay, we have employed the traditional business records exception to the hearsay rule."), for the proposition that the same principles apply to business records kept in a computer system.

We do not believe that Ruiz's pretrial stipulation that the documents were authentic waived her argument that the Commonwealth did not lay the proper foundation for the reliability of the computer system. Authentication does not, in itself, establish admissibility; there are many reasons why an indisputably authentic document would still fail the test of admissibility, that is, if admission of the document would offend some separate and discrete principle of the law of evidence, for example, if the document were irrelevant, privileged, more prejudicial than probative, etc. "Authentication is merely the process of showing that a document is genuine and that it is what its proponent claims it to be." Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990). Foundation is a more general term for what the proponent of evidence must establish before the evidence can be admitted. See Sinclair, Kearfott, Sheridan & Imwinkelried, Virginia Evidentiary Foundations, § 1.2, at 2 (1998). Thus, we must proceed to the merits of Ruiz's foundation objection. If Penny required additional foundation testimony regarding the reliability of records stored in a private telephone company's computer system, the trial court erred in admitting the evidence. However, because of her stipulation to their

- 8 -

authenticity, the trial judge properly admitted the telephone records if they are properly analyzed as business records.

We conclude that the trial court was correct in overruling Ruiz's foundation objection because Penny is distinguishable from this case. "[B]ecause the call trap is specifically 'employed for the purposes of litigation and during the competitive process of ferreting out criminal agents the added check [of additional foundation evidence regarding the reliability of the call trap device] is needed.'" Tatum v. Commonwealth, 17 Va. App. 585, 589, 440 S.E.2d 133, 136 (1994) (quoting Penny, 6 Va. App. at 500 n.3, 370 S.E.2d at 317 n.3). Unlike the records produced by the call trap device in Penny, the telephone records in this case were relied upon in the ordinary course of business and recorded by a disinterested telephone company. We find persuasive the reasoning of United States v. Vela, 673 F.2d 86 (5th Cir. 1982), which considered and rejected an objection to the admission of telephone billing records based on the prosecution's failure to present testimony proving the reliability of the computer equipment that produced the records.

> While the suggestion has been made that there are unique foundation requirements for the admission of computerized business records under [federal] Rule 803(6), this court has previously held that "computer data compilations . . . should be treated as any other record of regularly conducted activity."

Id. at 90 (quoting Rosenberg v. Collins, 624 F.2d 659, 665 (5th Cir. 1980) (other citations omitted).

> The failure to certify the brand or proper operating condition of the machinery involved does not betray a circumstance of preparation indicating any lack of trustworthiness. . . . Vela's arguments for a level of authentication greater than that regularly practiced by the company in its own business activities go beyond [Fed. R. Evid. 803(6)] and its reasonable purpose to admit truthful evidence."

Id. at 90-91. See also United States v. Salgado, 250 F.3d 438, 451-52 (6th Cir. 2001) (holding computer-generated telephone records kept by phone company for billing purposes were admissible as business records); United States v. Briscoe, 896 F.2d 1476, 1493-94 (7th Cir. 1990) (same); United States v. Linn, 880 F.2d 209, 216 (9th Cir. 1989) (holding computer-generated log of telephone calls from the defendant's hotel room was admissible as a business record).

Certain language from the Supreme Court's decision in Van Roekel supports this conclusion. In Van Roekel, the Supreme Court directly followed its business records exception analysis with the following statement: "Thus, no additional *foundation* evidence was required for *admission* of the bank's letters to Malcolm." Van Roekel, 272 Va. at 556, 636 S.E.2d at 386 (emphasis added). In short, though Ruiz is correct that her pretrial stipulation did not waive her separate objection based on the reliability of the computer system, the Commonwealth is correct that this same foundation objection was properly overruled. So long as there is no *valid* objection to a document based on one or more separate and distinct principles of the law of evidence, the proponent of a document having the characteristics of a business record establishes the proper evidentiary foundation for the introduction of the document into evidence by establishing that the document is authentic. In this case, Ruiz stipulated that the disputed telephone records were authentic. This stipulation relieved the Commonwealth of the burden of producing testimony from the telephone company's custodian of records establishing that the records were contemporaneously recorded and relied upon in the ordinary course of business. We, therefore, hold that the trial court did not err in overruling Ruiz's foundation objection to the admission of the disputed telephone records.

## 2) Did the Trial Court Err in Overruling Ruiz's Foundation Objection to the Admission of the Documents Dellawar Testified he Received From Ruiz?

Ruiz argues that the trial court erred by admitting the documents Dellawar testified he received from her concerning Dellawar's DUI case.  She contends that the Commonwealth failed to lay a proper foundation for the admission of the documents because no witness testified that Ruiz created the documents and because no witness testified that the documents had the characteristics of a public record.  We disagree because Dellawar's testimony that Ruiz personally gave these documents to him established their authenticity.  Ruiz's arguments properly concern the weight the trier of fact ought to have given to the documents, not their admissibility.

Ruiz cites Jackson v. Commonwealth, 13 Va. App. 599, 413 S.E.2d 662 (1992).  In Jackson, we held that the authenticity of a document could be established by "witnesses testifying as to the origin or execution of a document."  Id. at 602, 413 S.E.2d at 665.  Because there was no direct testimony as to the origin or execution of the documents admitted at Ruiz's trial, Ruiz argues that the trial court erred in receiving them into evidence.  However, Jackson does not stand for the proposition that direct evidence is the *only* method of authenticating a document.  Id. (referring to "four basic non-statutory means of authentication").  The proponent of evidence may also establish the authenticity of a writing by circumstantial evidence.  Id. at 602 n.1, 413 S.E.2d at 664 n.1; Friend, supra, § 15-6, at 540.  We agree with the Commonwealth that Ragland v. Commonwealth, 16 Va. App. 913, 434 S.E.2d 675 (1993) suggests that Dellawar's testimony that he received the documents from Ruiz was sufficient evidence of authenticity for the admission of the documents into evidence.

> Here, the evidence established that appellant threw the note into another inmate's cell and asked the inmate "to get it delivered" to Vernon, who was one of appellant's witnesses.  The inmate

- 11 -

> identified the note as the one he had received and identified
> appellant as "the person that threw the note." Further, the contents
> of the note were "fairly unique" to the offense for which appellant
> was being tried. We find the evidence sufficient to support the
> trial court's decision to admit the note.

Id. at 919-20, 434 S.E.2d at 679. In this case, as in Ragland, Dellawar identified the documents as the documents he was given and identified Ruiz as the person who gave the documents to him. We, therefore, hold that the trial court did not err in overruling Ruiz's objection to the admission of the documents into evidence.

### 3) Did Jury Instruction 6 Unconstitutionally Shift the Burden of Persuasion to the Defendant?

The Commonwealth originally offered a jury instruction which stated: "Possession of a forged record by one, who provides it to another for his own use, creates an inference that such person forged the public record unless there is a reasonable explanation." Defense counsel objected that the "reasonable explanation" language unconstitutionally shifted the burden of persuasion to the defendant and also commented on her decision not to testify. The trial court agreed that there were problems with this instruction and amended the instruction to create Jury Instruction 6:

> If you believe from the evidence that Cecilia Ruiz provided a
> forged public record to Munir Dellawar with the intent that he use
> it as a valid record, then you may infer that Cecilia Ruiz forged the
> public record, unless you have a reasonable doubt that she did
> forge the public document.

Despite the elimination of the "reasonable explanation" language, Ruiz made the same objections to Jury Instruction 6 that she had made earlier to the Commonwealth's original proposed instruction.

On appeal, Ruiz argues that Jury Instruction 6 shifted the burden of persuasion to the defendant because the instruction presumes the document that Ruiz handed to Dellawar was a

- 12 -

forged public record within the meaning of Code § 18.2-168. She relies on our Supreme Court's decision in Bullock v. Commonwealth, 205 Va. 558, 138 S.E.2d 261 (1964). Bullock reversed a defendant's forgery conviction because the trial court committed reversible error in issuing the following instruction: "The court instructs the jury that where one is in possession of a forged instrument, and endeavors to obtain money thereon, this raises a presumption that such person forged the same, and unless such possession or forgery is satisfactorily explained, the presumption becomes conclusive." Id. at 561, 138 S.E.2d at 263-64. We disagree with Ruiz's argument because we believe Jury Instruction 6 created a permissible inference, not a mandatory presumption.

> A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves the predicate facts, but does not require the jury to draw that conclusion. . . . Mandatory presumptions . . . violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of the offense. A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved.

Francis v. Franklin, 471 U.S. 307, 314 (1985) (citations omitted). See also Dobson v. Commonwealth, 260 Va. 71, 531 S.E.2d 569 (2000) (holding that jury instruction that proof of recent possession of stolen property by the defendant was a circumstance allowing inference that defendant was the thief in the absence of a reasonable explanation allowed only a permissive inference and was not an unconstitutional mandatory presumption); Yap v. Commonwealth, 49 Va. App. 622, 643 S.E.2d 523 (2007) (holding that statutory provision that blood alcohol content of 0.08 or greater at the time of scientific test gave rise to "rebuttable presumption" that the

- 13 -

accused was under the influence of alcohol at the time of the driving allowed only a permissive

inference and was not an unconstitutional mandatory presumption).

Unlike the erroneous instruction in Bullock, the language of Jury Instruction 6 is couched

in permissive terms; the jury was instructed that they "may infer" that Ruiz forged the record if

they believed that she provided a forged public record to Dellawar.  In Bullock, the jury was told

that it *must* presume that the defendant forged the record and that the presumption would become

*conclusive* in the absence of a satisfactory explanation.  Id. at 561, 138 S.E.2d at 263-64.  We

must also disagree with Ruiz's argument that Jury Instruction 6 unconstitutionally presumed that

the document she handed to Dellawar was a forged record for two reasons.  First, the same can

be said of the instruction the Bullock Court suggested the trial court ought to have given in that

case.

> The instruction should have told the jury that the unexplained
> possession of a forged instrument by one who endeavors to obtain
> money thereon is prima facie evidence that such person forged the
> instrument, but that such prima facie evidence may be rebutted by
> an explanation satisfactory to the jury as to how he came into
> possession of the instrument.

Id. at 563, 138 S.E.2d at 265.[1]  Second, when a jury receives numerous instructions it must

consider the instructions as a whole in light of all the evidence.  Walshaw v. Commonwealth, 44

Va. App. 103, 119, 603 S.E.2d 633, 641 (2004).  The jury was instructed that Ruiz was presumed

to be innocent.  The charging instruction also provided that "The Commonwealth must prove

beyond a reasonable doubt each of the following elements of that crime:  1) That Cecilia Ruiz

---

[1] Ruiz further suggests that the model jury instruction derived from this language in
Bullock also impermissibly shifts the burden of persuasion to the defendant because of the
"reasonable explanation" language.  Because the trial court in this case eliminated the
"reasonable explanation" language from Jury Instruction 6, we express no opinion as to the
merits of this argument.

materially altered *a public record*; 2) That she materially altered such record with the intent to defraud . . . ."[2]  (Emphasis added).  Thus, the charging instruction expressly required the Commonwealth to prove beyond a reasonable doubt that the document was a public record.  We, therefore, hold that Jury Instruction 6 did not unconstitutionally shift the burden of persuasion to the defendant.

### 4) Did Jury Instruction 6 Impermissibly Comment on Ruiz's Silence In Violation of the Fifth Amendment?

Ruiz suggests a second reason that the trial court erred in giving Jury Instruction 6 to the jury.  She argues that the instruction impermissibly commented on her decision not to testify.  We reject this argument because the text of Jury Instruction 6 makes no reference whatsoever to the defendant's decision not to testify.

> If you believe from the evidence that Cecilia Ruiz provided a forged public record to Munir Dellawar with the intent that he use it as a valid record, then you may infer that Cecilia Ruiz forged the public record, unless you have a reasonable doubt that she did forge the public document.

Compare Johnson v. Commonwealth, 236 Va. 48, 372 S.E.2d 134 (1988) (affirming conviction over defendant's argument that prosecutor impermissibly commented on his right to silence by posing rhetorical question to jury asking whether "they had heard from the witness stand any evidence" that defendant had denied his guilt).  To determine whether the jury instruction was an adverse comment on the defendant's failure to testify, "the test is whether, in the circumstances of the particular case 'the language used was manifestly intended or was of such character that

---

[2] Ruiz also argues that Jury Instruction 6 is inconsistent with this finding instruction in that it added an additional element to the offense, i.e. that she gave the document to Dellawar "with the intent that he use it as a valid record . . . ."  If this was error, we do not understand how it could have been more than harmless error because adding an element to any offense invariably adds to the burden the Commonwealth must meet before the defendant may be convicted.

the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" Hines v. Commonwealth, 217 Va. 905, 907, 234 S.E.2d 262, 263 (1977) (quoting Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955)). See also Patrick v. Commonwealth, 50 Va. App. 650, 654-55, 653 S.E.2d 288, 290 (2007) (applying this test in determining the constitutional propriety of a jury instruction). It is difficult to understand how Jury Instruction 6 could possibly be prohibited by this test when deference to precedent requires us to assume that the prosecutor's remark in Johnson was not. We hold that Jury Instruction 6 was not an impermissible comment on Ruiz's decision not to testify.

5) Did Jury Instruction 6 Impermissibly Place a
Judicial Imprimatur On a Specific Piece of Evidence?

Ruiz concedes that she did not preserve this question for appeal because she made no timely objection to the ruling in the trial court. She asks us to apply the "ends of justice" exception to the contemporaneous objection rule and reverse her conviction. Rule 5A:18 provides:

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

"Under Rule 5A:18 we do not notice the trial errors for which no timely objection was made except in extraordinary circumstances when necessary to obtain the ends of justice." Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989). "[A] circuit court ordinarily does not have an affirmative duty to give a jury instruction on a particular legal principle when a

criminal defendant fails to request that the jury be instructed on that principle."  Commonwealth

v. Jerman, 263 Va. 88, 93, 556 S.E.2d 754, 757 (2002).[3]

> Whether we apply the bar of Rule 5A:18 or invoke the ends of
> justice exception, we must evaluate the nature and effect of the
> error to determine whether a clear miscarriage of justice occurred.
> We must determine whether the error clearly had an effect on the
> outcome of the case.  The error must involve substantive rights.

Brown, 8 Va. App. at 131, 380 S.E.2d at 10.  "We have held that a clear miscarriage of justice

occurs when the error is 'clear, substantial, and material.'"  Phoung v. Commonwealth, 15

Va. App. 457, 464, 424 S.E.2d 712, 716 (1992) (quoting Brown, 8 Va. App. at 132, 380 S.E.2d

at 12).

Virginia decisions on the application of the ends of justice exception to allegedly

erroneous jury instructions have considered whether the alleged error concerned an issue that

was important to the defense at trial and whether it was important enough to affect the outcome

at trial.  Id. at 465-66, 424 S.E.2d at 417.  See also Jimenez v. Commonwealth, 241 Va. 244, 250,

402 S.E.2d 678, 681 (1991); McBride v. Commonwealth, 44 Va. App. 526, 530, 605 S.E.2d 773,

774 (2004).  In Campbell v. Commonwealth, 14 Va. App. 988, 992, 421 S.E.2d 652, 654 (1992)

(en banc), we invoked the "ends of justice" exception and reversed the defendant's conviction

because the finding instruction omitted an element of the offense.  "Attaining the 'ends of

justice' requires correction of an instruction which allows a jury to convict the defendant without

proof of an element of the crime."  Id.  Our decision in Campbell followed our Supreme Court's

decision in Jimenez.  "We also reject the Attorney General's contention that Jimenez waived his

right to raise this matter on appeal because he failed to preserve the error at trial.  The granted

---

[3] Jerman involved the Supreme Court's Rule 5:25.  Rules 5:25 and 5A:18 are "virtually identical."  Jimenez v. Commonwealth, 241 Va. 244, 248, 402 S.E.2d 678, 680 (1991).

instruction omitted some essential elements of the offense." Jimenez, 241 Va. at 251, 402 S.E.2d at 681. The Jimenez Court also noted that the Commonwealth produced no evidence relating to the essential elements that had been omitted from the disputed jury instruction. Id.

Our Supreme Court has also applied the ends of justice exception of Rule 5:25 and reversed the defendant's conviction when the trial court failed to instruct the jury that they could convict the defendant of the lesser offense of felony murder, for which there was sufficient evidence to convict the defendant, *and* the evidence at trial was insufficient as a matter of law to support the jury's verdict that the defendant was guilty of capital murder. Ball v. Commonwealth, 221 Va. 754, 758-59, 273 S.E.2d 790, 793 (1981). Moreover, when the defendant's sole defense to a rape indictment was consent, when the defendant produced evidence of consent, and when defense counsel failed to offer a permissible consent instruction, our Supreme Court applied the ends of justice exception, reversed the defendant's conviction, and remanded his case for a new trial so that the jury could be instructed on the defense of consent. Bryant v. Commonwealth, 216 Va. 390, 393, 219 S.E.2d 669, 671-72 (1975).

Other cases examining erroneous jury instructions have declined to apply the ends of justice exception. In McBride, the defendant was convicted of carnal knowledge of a child. McBride, 44 Va. App. at 528, 605 S.E.2d at 773. The words "without force" appear in the statutory definition of carnal knowledge, and the defendant argued that we should apply the ends of justice exception and reverse his conviction because the failure of the trial court to include "without force" in the finding instruction allowed the jury to convict him without proof of an element of the offense. Id. at 531-32, 605 S.E.2d at 775. We declined to invoke the ends of justice exception because the question of force was not vital to his defense; we knew this because "neither the prosecutor nor McBride's attorney argued to the jury that the evidence proved force

- 18 -

existed.  The evidence also did not raise the specter of actual force being used to accomplish the act of intercourse."  Id.

In Allen v. Commonwealth, 20 Va. App. 630, 638-39, 460 S.E.2d 248, 252 (1995), overturned on unrelated double jeopardy grounds by Allen v. Commonwealth, 252 Va. 105, 472 S.E.2d 277 (1996), the charging instruction correctly stated the elements of breaking and entering.  However, the elements were stated in the passive voice, i.e. the Commonwealth must prove "(1) That the dwelling house of Henry and Ruth Chiles was broken into and entered without permission; and (2) That the breaking was done in the daytime; and (3) That it was done with the intent to commit larceny."  On appeal, we addressed the argument that, because the instruction did not tell the jury that they needed to find that *the defendant* was the person who broke into the house, this instruction allowed the jury to find the defendant guilty without any proof of criminal agency on his part.  Accordingly, the defendant asked us to apply the ends of justice exception to Rule 5A:18 and reverse his conviction.  We declined to do so.

> Even though we accept the appellant's contention that Instruction No. 5 did not expressly inform the jury that in order to find the defendant guilty, they must find that he was the person who broke and entered the Chiles' home, that requirement of proof was clearly implicit in the trial process from indictment through arraignment and verdict.  Also, it was part of the other instructions, including the instruction on larceny.  Thus, on this record, Instruction No. 5 as given could not have misled the jury or allowed them to find the defendant guilty without finding that he was the criminal agent.  The evidence proved beyond a reasonable doubt that a crime had been committed and that the defendant committed it.  The appellant could not have been convicted for conduct that was not criminal.  Moreover, because the jury could not reasonably have applied Instruction No. 5 absent proof of criminal agency, no miscarriage of justice occurred.

Id. at 640, 460 S.E.2d at 252-53.

In <u>Phoung</u>, 15 Va. App. at 465, 424 S.E.2d at 717, the trial court granted a clearly erroneous jury instruction that permitted the jury to convict the defendant of breaking and entering with the intent to commit robbery if they found that he broke and entered with the intent to commit larceny. "This error was 'clear.' The Commonwealth concedes, as it must, that the instruction was contrary to the statutory law of breaking and entering with the intent to commit robbery. Because the erroneous instruction related to the elements of the crime charged, the error was also 'substantial.'" <u>Id.</u> However, we declined to invoke the ends of justice exception and affirmed the defendant's conviction because we concluded that the error was not material, that is, it was not important enough to affect the outcome of the trial.

> The erroneous instruction related only to the issue of whether the burglary was committed with the intent to commit violence or intimidation, a fact which Phoung did not contest. No evidence was presented to suggest or support a finding that Phoung entered the dwelling with an intent other than to commit robbery. Moreover, the jury's determination that Phoung robbed Nguyet necessarily confirms the jury's acceptance of the evidence that established that Phoung was the first of the four intruders to enter the dwelling and that *at that time* he was armed with the firearm he then held "to [Nguyet's] head." The evidence that Phoung was armed with a firearm at the time he broke and entered the victims' dwelling, coupled with the evidence that the intruders had gone to the dwelling for the express purpose of robbing one of the victims there, supports the jury's finding that Phoung was guilty of "burglary as charged in Count I of the indictment," which charged burglary with the intent to commit robbery.

<u>Id.</u> at 466, 424 S.E.2d at 717 (alteration and emphasis in original).

Ruiz argues that Jury Instruction 6 impermissibly placed a judicial imprimatur on a specific piece of evidence because it allowed the jury to conclude that she was the person who forged the records if they believed, from the evidence, that she was the person who provided forged records to Dellawar. Even if we assume that Ruiz is correct in her argument that Jury Instruction 6 was clearly erroneous pursuant to <u>Woods v. Commonwealth</u>, 171 Va. 543, 199 S.E.

465 (1938), and <u>Terry v Commonwealth</u>, 5 Va. App. 167, 360 S.E.2d 880 (1987), we do not believe the alleged error is sufficiently substantial or material to justify the ends of justice exception to Rule 5A:18. Unlike the instructions in <u>Campbell</u> and <u>Jimenez</u>, Jury Instruction 6 did not omit an essential element of the offense. The jury was instructed that, to convict the defendant, the Commonwealth must prove beyond a reasonable doubt that Ruiz materially altered a public record with the intent to defraud. Accordingly, the alleged error in Jury Instruction 6 did not create the possibility that the jury could convict Ruiz for conduct that was not an offense. <u>Compare</u> <u>Campbell</u>, 14 Va. App. at 993, 421 S.E.2d at 655. Unlike the jury in <u>Bryant</u>, Ruiz's jury was not left without an instruction on a principle of law vital to her defense at trial.

Moreover, Jury Instruction 6 allowed a permissive inference that the jury could infer, if it believed Dellawar's testimony that he received certain forged documents from Ruiz, that Ruiz had forged the documents. Yet Ruiz did not attempt a defense based on an alternative, innocent explanation for her possession of the documents. Indeed, the closing argument of defense counsel was an attack on the believability of Dellawar's entire testimony. She argued that Dellawar was lying about Ruiz's entire involvement in the crime; she argued that her advice that Dellawar should plead guilty to the DUI and immediately appeal, leaving her to remove all traces of the conviction, was a complete fabrication. Given what her defense was at trial, the conclusion is unavoidable that the jury's verdict rested on their assessment of the credibility of Dellawar's entire account of events. The jury could not have reasonably believed that Dellawar was *lying* about the agreement between himself and Ruiz to remove all traces of his DUI conviction and simultaneously have convicted her because of the inference allowed by Jury Instruction 6. Assuming, without deciding that Jury Instruction 6 was clearly erroneous, it was

an error akin to the errors that did not justify the ends of justice exception in <u>McBride</u>, <u>Allen</u>, and <u>Phoung</u>; that is, it was not an error that could have affected the outcome of Ruiz's trial. We, therefore, hold that Ruiz's argument that Jury Instruction 6 placed a judicial imprimatur on a specific piece of evidence is barred by Rule 5A:18, and we decline to invoke the ends of justice exception.

6) <u>Did the Trial Court Err in Failing to Instruct<br>the Jury on the Definition of Public Record?</u>

Relying on <u>Campbell</u> and <u>Jimenez</u>, Ruiz argues that the trial court had an affirmative duty to instruct the jury on the statutory definition of a public record. She suggests that the definition in Code § 42.1-77 would have been appropriate, and she asks us to invoke the ends of justice exception of Rule 5A:18 and to reverse her conviction. We cannot agree because there is an important distinction between the errors committed by the trial courts in <u>Campbell</u> and <u>Jimenez</u> and the failure to instruct the jury on the statutory definition of "public record" at Ruiz's trial. The finding instructions in <u>Campbell</u> and <u>Jimenez</u> each allowed the jury to convict the defendant without any proof of an essential element of the offense. <u>Jimenez</u>, 241 Va. at 251, 402 S.E.2d at 681; <u>Campbell</u>, 14 Va. App. at 992, 421 S.E.2d at 654. The finding instruction in this case *did* require the Commonwealth to prove beyond a reasonable doubt "1) That Cecilia Ruiz materially altered a public record." Thus, the finding instruction in this case did not permit conviction without proof of an essential element of the offense. It merely failed to further define an essential element of the offense that was already part of the charging instruction.

In <u>Bazemore v. Commonwealth</u>, 42 Va. App. 203, 207, 590 S.E.2d 602, 604 (2004), the defendant was convicted of, among other things, feloniously eluding the police in violation of Code § 46.2-817. To prove that the defendant feloniously eluded the police, the Commonwealth had the burden of proving that the defendant drove a motor vehicle with a "willful and wanton

disregard" for the officer's signal.  Id. at 214, 590 S.E.2d at 607-08.  Despite not having made a timely objection to the trial court's failure to do so, the defendant argued on appeal that the trial court erred in failing to instruct the jury on the legal definition of "wanton."  We held that the defendant had waived this issue by failing to object in the trial court, and we expressly declined to invoke any of the exceptions to Rule 5A:18.  Id. at 214-15, 590 S.E.2d at 608.

To be considered under the ends of justice exception, the error committed by the trial court must be a clear error.  Ruiz quotes the following description of "clear error" in her brief: "To be 'clear' the error must be apparent under existing statutory or case law without necessity of further judicial interpretation . . . ."  See Campbell, 14 Va. App. at 997, 421 S.E.2d at 657 (Barrow, J., concurring).  We expressly decided that we would not invoke the ends of justice exception to consider whether the trial court erred in failing to provide further definition of an element of the charged offense in Bazemore.  Given this decision, reversal of Ruiz's conviction would, to say the least, require "further judicial interpretation."  Accordingly, we will not consider this assignment of error pursuant to Rule 5A:18, and we do not believe that the ends of justice exception applies.

### 7)  Did the Trial Court Err in Failing to Instruct the Jury on the Definition of Forgery?

Ruiz also argues that the trial judge erred in leaving the term "forgery" undefined by the jury instructions.  Relying on Campbell and Jimenez, she asks us to invoke the ends of justice exception to Rule 5A:18 and to reverse her conviction.  We decline to do so because it is clear to us that this was not a material error.

Before we will apply the ends of justice exception, we must conclude that the error is clear, substantial, and material.  Campbell, 14 Va. App. at 993, 421 S.E.2d at 655.  For the error to be material, it must be important enough to affect the outcome of the trial.  Phoung, 15

Va. App. at 465, 424 S.E.2d at 717. "Forgery 'is defined as "the false making or materially altering with the intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability."'" Bennett v. Commonwealth, 48 Va. App. 354, 357, 631 S.E.2d 332, 333 (2006) (quoting Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984)). Though there was no jury instruction in this case expressly defining the element of forgery, the charging instruction required the Commonwealth to prove beyond a reasonable doubt that "1) That Cecilia Ruiz materially altered a public record . . . ." Because our cases have defined forgery as "material alteration," we agree with the Commonwealth that any definition would have been practically identical to the language of the charging instruction. Thus, the error, if any, was not important enough to affect the outcome of Ruiz's trial. We decline Ruiz's invitation to invoke the ends of justice exception to Rule 5A:18, and it is, therefore, inappropriate for us to consider this question presented because it was not preserved at trial.

### 8) Did the Trial Court Err in Convicting Ruiz of Forging a Public Record?

Finally, Ruiz argues that the evidence was insufficient as a matter of law for a conviction because the evidence affirmatively showed that the documents she gave to Dellawar were not public records. Ruiz particularly emphasizes the testimony of Nancy Lake ("Lake"), the clerk of the Fairfax County General District Court. Lake testified that it was not the policy of her office to certify or date-stamp screen prints from the traffic court computer system. "[W]e don't do certified copies of screen prints," Lake said, "because they're not an official record." Once again citing Jimenez, Ruiz argues that she was convicted of conduct that was not a crime and that her conviction must be reversed to obtain the ends of justice, despite her failure to argue to the trial court that the documents did not meet the definition of public records.

- 24 -

We disagree. While the Commonwealth apparently made no objection to Lake's opinion testimony regarding an ultimate issue in the case, Lake's views regarding the legal status of the records were not binding on the finder of fact.

It is also far from clear that the documents admitted into evidence in Ruiz's trial failed to meet the statutory definition of public record:

> A public record is any recorded information that documents a transaction or activity by or with any public officer, agency or employee of an agency. The determination of public record does not depend on the physical form or characteristic of the recorded information or on the medium upon which such information is recorded. The recorded information constitutes a public record if it is (1) produced, (2) collected, (3) received, or (4) retained in pursuance of law or in connection with the transaction of public business.

Code § 42.1-77. We believe that the recorded results of court cases meet even the most restrictive definition of information "retained in pursuance of law or in connection with the transaction of public business." "When considering the sufficiency of the evidence on appeal, we give the benefit of all reasonable inferences deducible from the evidence to the party prevailing at trial." Shropshire v. Commonwealth, 40 Va. App. 34, 38, 577 S.E.2d 521, 523 (2003).

With this standard in mind, the record clearly supports the conclusion that Ruiz materially altered recorded information regarding the results of misdemeanor traffic cases collected and kept by a general district court. Dellawar testified that Ruiz told him she would eliminate all traces of his DUI from the court computer system. Officer Middlebrooks testified that he witnessed Dellawar's plea of guilty and that he later found no record of Dellawar's DUI conviction in his computer. Sergeant Fulton testified that he was unable to find the file corresponding to Dellawar's DUI case at the clerk's office. Moreover, Dellawar testified that

Ruiz gave him two documents purporting to be Traffic Hearing/Disposition Updates, one of which was ostensibly signed by Cheryl Cinfo and bore a stamp labeled "Fairfax County General District Court." Cheryl Cinfo testified that she did not sign the attestation clause. Dellawar also testified that Ruiz told him that she told him "that if anybody were ever to inquire or ask you specifically about that case that this is a certified copy from the courts." A reasonable jury could, if they believed this evidence – and given the verdict we must assume that they did – conclude that Ruiz materially altered a public record with the intent to defraud.

We also believe that Ruiz's argument that these documents were not forged public records is inconsistent with Campbell v. Commonwealth, 246 Va. 174, 431 S.E.2d 648 (1993). In Campbell, a Commonwealth's Attorney, who was charged with making an improper turn that resulted in a traffic accident, met with a general district court judge in the judge's chambers to plead guilty to the ticket. Id. at 176-77, 431 S.E.2d at 650. To spare the Commonwealth's Attorney the embarrassment of having his name appear on the docket, the judge told a deputy clerk to "scramble or jumble" the letters of the Commonwealth's Attorney's name in the traffic court computer system. Id. at 177, 431 S.E.2d at 650. Our Supreme Court affirmed that judge's conviction for forging a public record in violation of Code § 18.2-168. Id. at 184, 431 S.E.2d at 654. Given that Ruiz's conduct in this case was extremely similar to the behavior of the judge in Campbell, we are unwilling to conclude that this is an appropriate case for applying the ends of justice exception to Rule 5A:18. We, therefore, hold that Ruiz waived this question when she failed to argue to the trial court that the documents were not public records.

CONCLUSION

For the aforementioned reasons, we affirm Ruiz's conviction.

Affirmed.